COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia


SHARON BREEDEN WOOD
                                                    OPINION BY
v.        Record No. 2215-09-2                JUDGE ROBERT P. FRANK
                                                  NOVEMBER 23, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

Steven D. Benjamin (Betty Layne DesPortes; Benjamin &
DesPortes, P.C., on briefs), for appellant.

Virginia B. Theisen, Assistant Attorney General, (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Sharon Breeden Wood, appellant, was convicted, in a bench trial, of two counts of felony

child endangerment, in violation of Code § 18.2-371.1(B)(1).[1]  On appeal, she challenges the

sufficiency of the evidence and the admission of certain statements made by appellant.  For the

reasons stated, we affirm.

BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.  Martin v. Commonwealth, 4

Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  "The judgment of a trial court sitting without a

jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from

the evidence that the judgment is plainly wrong or without evidence to support it."  Id.

_____

    [1] Appellant was also convicted of driving under the influence, in violation of Code
§ 18.2-266, but this conviction is not a subject of this appeal.

So viewed, on September 23, 2008, C.W. observed appellant seated behind the steering wheel in her parked car in a commercial parking lot "hunched over and swaying back and forth." Appellant's two small children, ages two and five, were seated in the back seat, both in car seats. The back door to the car was open several inches. As C.W. pulled her vehicle next to appellant's, the "little boy" shut the door. A child said, "Mommy, let's go." Appellant did not respond.

C.W. observed that appellant's hair was messy, her eyes were "droopy," and her speech was slow and "a little bit slurred." C.W.'s fiancé approached appellant's vehicle to ascertain if appellant was all right. Appellant told him that she was "pretending." C.W and her fiancé went into a store to shop. When they left the store about a half-hour later, appellant's car had not moved and the engine was still turned off.

C.W. saw appellant chewing on some type of rag and then telephoned 911. C.W. observed appellant slowly drive her car from the parking lot to an adjoining lot near a bookstore, a distance less than 100 yards. The driver's side tire of Wood's car "grazed" the curb at the end of the aisle as she drove away. Other than "grazing" the curb, C.W. observed no erratic driving. Police officers arrived while C.W. and her fiancé were still in the parking lot. Sergeant George Russell of the Henrico Police Department, in response to the 911 call, saw appellant in the driver's seat with a "wash cloth or a towel next to her face," and two small children in the back seat of the car.

Upon Russell's request, appellant rolled down the driver's window. Appellant's speech was slurred, and her eyes had a "gaze." Russell asked her for her identification. The car engine was still running, and the air conditioning was on. As appellant looked for her wallet, Russell noticed an odor of alcohol. Appellant searched for five minutes for the wallet, during which time she was "all over the front of the car." Appellant told Russell she had had a glass of wine with friends at lunch and was on her way to pick up another child from school. The school is about two to three miles from the scene. Russell then turned the investigation over to other officers.

- 2 -

As appellant was placed under arrest for driving while intoxicated, she struggled with the officers, protesting that she needed to take care of her children. She refused to enter the police car and upon being forced in, she slipped out of the handcuffs and attempted to escape from the police car. Throughout the struggle, appellant said she needed to return to her children. She became belligerent, cursing at the officer and threatening to have him fired. Ultimately, the officer forced appellant to the ground and restrained her with leg irons. She continued to "rant and rave," for approximately fifteen minutes.

Henrico Police Officer Lawrence Peranski, one of the officers at the scene, noticed that appellant was stuttering and had a "moderate" odor of alcohol. Appellant told Officer Peranski she had taken the drug Paxil,[2] and had consumed a glass of wine with lunch.

Peranski administered field sobriety tests. Appellant was wobbling during the tests. On some tests she performed adequately, and on others she performed poorly. Appellant's blood alcohol content was .19 when the test was administered at 4:31 p.m.

Dr. Les Edinboro, a forensic supervisor at the Division of Forensic Science, testified as an expert in forensic toxicology without objection. Using "reversal extrapolation," he testified that although the analysis of the blood drawn at 4:31 p.m. was .19% by weight by volume, at the time of her driving appellant's blood alcohol level was .22 to .26% by weight by volume.

Dr. Edinboro described alcohol as a central nervous system depressant. He explained that judgment, perception, and control are necessary factors for safe driving. At a blood alcohol content of .22, one experiences "the loss of all critical judgment." At that level an individual's perception is impaired because one suffers double vision, blurred vision, and a delayed ability to recover from

---

[2] Paxil is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors.

glare. Regarding control, Dr. Edinboro opined that "at these levels," there is a "severe impact upon sensory motor coordination, motor coordination, balance."

Drowsiness becomes a problem because "the brain is actually starting to go to asleep [sic] because the amount [of alcohol] is so high." Dr. Edinboro testified at that level of intoxication one would exhibit "exaggerated emotional states," and "an inability to control actions and behaviors." The individual's reaction time would also be profoundly increased. The scientist opined that to reach a .22 BAC, one would have to consume about ten alcoholic beverages.

Appellant's blood at the time of its removal showed a level of Zolpidem (trade name Ambien) at .06 mg/liter. At the time of the incident, Dr. Edinboro opined the level would be .12 mg/liter. The level of Ambien was consistent with the ingestion of one tablet. This drug is a hypnotic drug with the primary purpose of inducing sleep.

Dr. Edinboro explained the behaviors of one who has taken Ambien are those of one in a "sleep-like state." The warnings attached to Ambien direct the patient to allow seven to eight hours for sleep from the time the medication is consumed, so that one is not aroused from sleep. If such is the case, one will experience "drowsiness, confusion, lack of cognitive ability and some motor incoordination." Dr. Edinboro said, "It's like being aroused out of a sleep and not being able to function correctly."

He opined that the fact that there is Zolpidem in the blood at .09 indicates the person should be sleeping, not driving. Finally, Dr. Edinboro noted that both alcohol and Zolpidem are central nervous system depressants, so there is an "additive effect" when both are consumed, and it is "very hazardous to even [] attempt to operate a motor vehicle" at the levels present in appellant's blood.

In finding appellant guilty, the trial court found willful conduct, that she was intentionally driving after drinking alcohol and taking Ambien, that she had a high level of intoxication, that appellant had to know the effects of alcohol, and concluded:

I find from the evidence that the defendant intentionally drove in the car after drinking alcohol and taking the Ambien prescription medication. This was willful, meaning that it was a knowing, intentional act in the care of a child.

I find from the facts, from the testimony that her level of intoxication was very high. Dr. Edinboro's testimony was credible and he wasn't impeached in any way, that she had a blood alcohol content at the time that the police arrived of about .22. And he described the effects of that level of intoxication on motor skills, judgment, and control.

* * * * * * *

And I have to infer that if she had the prescription, she had to know the warnings not to operate machinery or a motor vehicle while under the influence of the Ambien. And in addition there was evidence that she intended to drive from the [parking lot] where she was at 1:00 p.m. to [the school].

The thing that takes this case out of the ordinary DUI is that she was so intoxicated that a citizen, [C.W.] and her boyfriend, were disturbed in their observations of the defendant and they were so concerned that they called the police. And then you have the fact that when they went into the [store], after first checking on Ms. Wood, it was 30 minutes before they came out of the [store], and she was still in the same condition. And in the condition they described was this semi-conscious condition that she was slumped over the wheel.

. . . [S]he was drowsy, she had slurred speech, and she had been sitting in the parking place for 30 minutes. She failed the sobriety tests. And she reacted to the police investigation in a very unusual manner. She did not have the ability to control her motor skills or use her mature judgment that we consider necessary for parents of small children.

The question at law is whether this was gross, wanton, and culpable. I find that it was aggravated conduct. It was culpable because it was not improbable that injury to the children would occur when she drove away from the [parking lot].

* * * * * * *

But with all of these circumstances, it seems to me that it's very clear that her conduct created a probability of injury or death to the children.

This appeal follows.

- 5 -

ANALYSIS

Felony Child Neglect

Appellant was convicted of violating Code § 18.2-371.1(B)(1), which provides in relevant part:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Myers v. Commonwealth, 43 Va. App. 113, 118, 596 S.E.2d 536, 538 (2004) (citation omitted and emphasis in original). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original). Thus, we do not "substitute our judgment for that of the trier of fact" even if our opinion were to differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

In order for a person to be convicted of felony child neglect, the Commonwealth must prove beyond a reasonable doubt that the accused committed a "willful act or omission in the care" of a child. Morris v. Commonwealth, 272 Va. 732, 738, 636 S.E.2d 436, 439 (2006). The

Commonwealth also must prove that the act or omission is "so gross, wanton and culpable as to show a reckless disregard for human life." Code § 18.2-371.1(B)(1).

> "The word 'gross' means 'aggravated or increased negligence' while the word 'culpable' means 'deserving of blame or censure.'" Cable [v. Commonwealth], 243 Va. [236,] 240, 415 S.E.2d [218,] 220 [(1992)] quoting Bell v. Commonwealth, 170 Va. 597, 611, 195 S.E. 675, 681 (1938)). Gross negligence amounts to criminal negligence "when acts of a wanton or willful character, committed or omitted, show 'a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his [or her] acts.'" Brown [v. Commonwealth], 278 Va. [523,] 528-29, 685 S.E.2d [43,] 46 [(2009)] (quoting Riley v. Commonwealth, 277 Va. 467, 484, 675 S.E.2d 168, 177 (2009)) . . . .
>
> In determining whether conduct rises to the level of criminal negligence, an "objective standard" applies, and criminal negligence may be found to exist when the defendant "either knew or should have known the probable results of his[/her] acts." Riley, 277 Va. at 483-84, 675 S.E.2d at 177 (internal quotation marks omitted)[.]

Noakes v. Commonwealth, 280 Va. 338, 346, 699 S.E.2d 284, 289 (2010) (other citations omitted).

Thus, the Commonwealth need not prove that an accused actually knew or intended that her conduct would likely cause injury or death, but rather that the accused should have known her acts created a substantial risk of harm. Id. "'[W]hether the required intent exists is generally a question for the trier of fact.'" Haywood v. Commonwealth, 20 Va. App. 562, 565-66, 458 S.E.2d 606, 607-08 (1995) (quoting Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977)).

Unlike Code § 18.2-371.1(A), the plain language of Code § 18.2-371.1(B)(1) does not require that a child actually suffer serious injury as a result of a defendant's acts or omissions. "The absence of an injury requirement in subsection (B)(1) reflects the lesser nature of the

offense, a Class 6 felony, and demonstrates a legislative intent to prohibit conduct that also has the potential of endangering a child's life." Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004).

Appellant here argues that there is no evidence, other than her intoxication, to show criminal negligence. She points out that she committed no other traffic violations while in the parking lot. Appellant stresses that she drove slowly for only a short distance, appropriately stopping at a stop sign, and never entering the highway. In short, she reasons that without more than intoxication, her conduct did not constitute felony child neglect.

Appellant focuses narrowly on her driving within the parking lot. Her argument ignores the totality of the circumstances, specifically, her high level of intoxication that prevented her from providing the necessary supervision and protection incumbent upon a parent of young children. See Barrett v. Commonwealth, 268 Va. 170, 186, 597 S.E.2d 104, 112 (2004) (discussing that a parent owes a duty of protection to a young child). Her argument also disregards that she drove to the parking lot in that intoxicated condition.

In Morris, the mother of two small children fell into a very deep sleep in the middle of the day. Before falling asleep she "double-locked" her trailer door in an effort to keep her children from wandering outside, which they had done on previous occasions. 272 Va. at 740, 636 S.E.2d at 440. However, the children, ages five and two, wandered outside and had to be returned to their home by police officers. Id. at 735, 636 S.E.2d at 437. The Court found that the mother's conduct did not amount to a "willful act or omission in the care of her children that was so gross, wanton, and culpable as to show a reckless disregard for their lives." Id. at 740, 636 S.E.2d at 440. The Court noted that the mother had locked the door to her home in an effort to prevent the children from wandering. Additionally, the Court found that although the mother

was in a very sound sleep there was no evidence to "indicate that Morris was under the influence of alcohol or drugs on that day." Id. Such is not the case here.

Unlike the facts in Morris, this record clearly shows that appellant had consumed a significant amount of alcohol, had ingested a sleep-inducing drug, and as a result was severely impaired. Also in Morris, the mother took steps to keep her children secure in a familiar environment. Here, appellant removed her children from the safety of their home and brought them to a potentially unsafe and unfamiliar place while unable to protect them.

In Barrett, a ten-month-old infant drowned when his two-year-old sister placed him in a bathtub. The evidence established that Barrett knew that her daughter had a "propensity for attempting to injure [him]." Barrett, 268 Va. at 184, 597 S.E.2d at 111. Barrett also knew that her daughter liked to play in the bathtub and was able to operate the tub's faucets by herself. In addition, Barrett knew that, shortly before the infant's death, when she had left her daughter unattended in the bathtub, her daughter had pulled the infant "head first" into the bathtub. Id. at 185, 597 S.E.2d at 111-12. The Court explained that Barrett "created a situation 'reasonably calculated to produce injury, or which [made] it not improbable that injury [would] be occasioned, and [she knew], or [was] charged with the knowledge of, the probable results of [her] acts.'" Id. at 184, 597 S.E.2d at 111 (quoting Cable, 243 Va. at 240, 415 S.E.2d at 220).

In explaining that Barrett failed in her duty to protect her children, the Court made clear that the evidence revealed "the story of a disaster just waiting to happen, a disaster any reasonable person would consider likely to result in injury to [the children]." Id. at 185, 597 S.E.2d at 112.

Here, while in a semi-conscious state, appellant took her children out of the shelter of their home and drove to a public parking lot surrounded by moving vehicles and strangers. Although the children were belted into safety seats, they were nevertheless exposed to danger, as

demonstrated by the young boy's ability to open and shut the back door. Appellant's bizarre behavior demonstrated that she was unable to protect and supervise her children. She was not sufficiently alert to accomplish even the simple task of quickly locating her wallet. Appellant's belligerent attitude toward the police further indicated her lack of control and judgment. As the trial court concluded, appellant's degree of impairment left her unable to "use her mature judgment that we consider necessary for parents of small children."

The dangers in neglecting one's supervisory duties are obvious. Virginia appellate courts have on several occasions affirmed convictions of felony neglect by underscoring the helplessness and vulnerability of the victims. See Davis v. Commonwealth, 230 Va. 201, 206, 335 S.E.2d 375, 379 (1985) (affirming an involuntary manslaughter conviction based upon criminal negligence for the failure to care for a senile and completely disabled elderly woman); Bean-Brewer v. Commonwealth, 49 Va. App. 3, 17, 635 S.E.2d 680, 687 (2006) (affirming conviction of a licensed child care provider who failed to adequately supervise an eight-year-old child and a ten-month-old baby); Kelly v. Commonwealth, 42 Va. App. 347, 356, 592 S.E.2d 353, 358 (2004) (characterizing a twenty-one-month-old infant who was left inside a car strapped into a child safety seat as "helpless"); cf. Ferguson v. Commonwealth, 51 Va. App. 427, 439, 658 S.E.2d 692, 698 (2008) (reversing a conviction of child felony neglect where the victim was required to stand outside in the winter cold, but was seventeen years old, appropriately dressed, and had free access to interior of a warm building).

We underscore at this point appellant's high level of intoxication. This alone justifies a finding of gross, wanton, and culpable conduct. Stevens v. Commonwealth, 272 Va. 481, 488, 634 S.E.2d 305, 310 (2006), cited with approval in Riley, 277 Va. at 484, 675 S.E.2d at 178. Although the Stevens Court pointed out additional aggravating conduct by Stevens, the Court reached the inescapable conclusion that alcohol alone can support such a finding. Id. "Again,

we focus upon Stevens' high level of intoxication, approximately three times the legal limit. This alone justifies a finding that Stevens' conduct was gross, wanton, and culpable."[3] Id.

In this case, Dr. Edinboro testified that an individual at appellant's intoxication level would experience "the loss of all critical judgment" and that one's perception would be negatively impacted. He also testified that one would suffer an inability to control actions and behaviors and that the brain would be starting to go to sleep. Appellant exhibited all these impairments.

As previously discussed, this case has several aggravating factors beyond appellant's intoxication. Appellant had ingested Ambien, a "hypnotic drug" that is "given for the primary purpose of causing and inducing sleep." Appellant was functioning poorly, having been observed slumped over in her seat, making the incongruous statement that "[w]e're just pretending," and found sucking on a rag. She remained in a semi-conscious state while in the parking lot for over thirty minutes, prompting concerned strangers to call 911. During this period her children were essentially unattended and vulnerable to outside dangers. Based on the evidence presented, the dangers inherent in such a situation could be inferred by the fact finder as a matter of common knowledge. Duncan, 267 Va. at 386, 593 S.E.2d at 215.

A reasonable fact finder could infer, based on common knowledge, that appellant knew or should have known that there were inherent dangers in transporting her children to a public place while being so impaired as to lose judgment, motor skills, and reason. See id. In addition, Sergeant Russell testified that he saw no alcohol in the car, and we find no evidence in the record

---

[3] We are not persuaded by appellant's reliance on Bishop v. Commonwealth, 20 Va. App. 206, 455 S.E.2d 765 (1995), for the contention that intoxication is not, by itself, criminal negligence. In Bishop, appellant contended that his driving after having been declared a habitual offender was a misdemeanor rather than a felony because the Commonwealth did not present any evidence that he drove in a dangerous manner. Because the manner of driving and not the level of intoxication elevates the offense to a felony pursuant to the habitual offender statute, this Court concluded that the evidence of intoxication failed to prove that Bishop's "driving, of itself . . . endanger[ed] the life, limb, or property of another." Id. at 212, 455 S.E.2d at 768.

that appellant had consumed the intoxicants while in the parking lot. By her statement to the police that she had wine with lunch, the trial court could infer that appellant had consumed alcohol before driving to the parking lot. See Rollston v. Commonwealth, 11 Va. App. 535, 547, 399 S.E.2d 823, 830 (1991) (discussing that the trier of fact is not required to accept a witness' testimony, but instead is free to "rely on it in whole, in part, or reject it completely"). Therefore, from the trial court's declaration that appellant "intentionally drove in the car after drinking alcohol and taking the Ambien," we find the court reasonably concluded that appellant drove to the parking lot in her highly inebriated and impaired condition with her children in the car. Viewing the evidence in the totality of the circumstances, appellant, as the sole adult responsible for the welfare of the children, "created a situation 'reasonably calculated to produce injury, or which [made] it not improbable that injury [would] be occasioned, and [she knew], or [was] charged with the knowledge of, the probable results of [her] acts.'" Barrett, 268 Va. at 184, 597 S.E.2d at 111 (quoting Cable, 243 Va. at 240, 415 S.E.2d at 220).

<u>Appellant's Statement Regarding Future Conduct</u>

Appellant contends the trial court erred in convicting appellant of felony child neglect because it relied on future conduct, i.e., her intent to drive out of the parking lot. Appellant argues that Code § 18.2-371.1 contemplates current or past actions, but not future conduct. The Commonwealth responds that this argument is waived pursuant to Rule 5A:18.

Rule 5A:18 is clear that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ."[4] Indeed, "[i]n order to preserve an issue for appeal, 'an objection must be timely made and the grounds stated with specificity.'" McDuffie v. Commonwealth, 49 Va. App. 170,

---

[4] Rule 5A:18 was amended effective July 1, 2010 to state in relevant part that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated with reasonable certainty at the time of the ruling . . . ."

177, 638 S.E.2d 139, 142 (2006) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986)). The purpose of the rule is to ensure that any perceived error by the trial court is "promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary. . . . Errors can usually be corrected in the trial court, particularly in a bench trial, without the necessity of appeal." Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989). If a party fails to timely and specifically object, she waives her argument on appeal. Arrington v. Commonwealth, 53 Va. App. 635, 641, 674 S.E.2d 554, 557 (2009).

At trial, the Commonwealth introduced evidence that appellant told Officer Russell that she was on her way to collect another child from school. Appellant objected to the statement on the basis that "it is not relevant to her conduct in the parking lot, that what she's going to do in the future has nothing to do with . . . not probative of felony child neglect." We find this objection specific and timely, and we will address appellant's argument here.

Appellant claims the trial court convicted appellant because it was probable that the children would suffer injury when she drove out of the parking lot to the school. She also argues the trial court improperly considered her statement concerning her future driving because such a statement is not relevant to the "willfulness" element of the felony child endangerment charges. Finally, she maintains the court erred in finding her guilty based solely upon that statement. Because these arguments are interrelated, we will address them simultaneously.

The trial court admitted the statement as relevant evidence to show appellant's willfulness. Because willful conduct must be knowing or intentional, rather than accidental, our inquiry is whether the statement is relevant to show appellant's state of mind, or intent. See Barrett, 268 Va. at 183, 597 S.E.2d at 111.

- 13 -

It is well settled that "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." James v. Commonwealth, 18 Va. App. 746, 753, 446 S.E.2d 900, 904 (1994). Generally, "[e]vidence is admissible if it is both relevant and material," and it is inadmissible if it fails to satisfy these criteria. Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 198, 361 S.E.2d 436, 441, 442 (1987). "Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993). "Evidence is material if it relates to a matter properly at issue." Evans-Smith, 5 Va. App. at 196, 361 S.E.2d at 441.

From the outset, we note that appellant's argument is based upon the faulty premise that the trial court viewed appellant's statement of her present intent to drive to the school as a future act or omission. Appellant's statement simply demonstrated her level of impairment in not comprehending the inherent dangers of driving while in her semi-conscious condition. The present act or omission is her inebriated condition that manifested itself in her lack of critical judgment. Her statement clearly proved that she did not recognize the danger to which she was currently exposing her children and underscored her inability to reason by believing that she was in a position to responsibly care for her children. We find the trial court properly considered this statement for the purpose of showing appellant's state of mind.

We disagree with appellant's contention that the trial court convicted her based upon her statement of intended future conduct. To do so, in view of the totality of the record here presented, would be to "'fix upon isolated statements of the trial judge taken out of the full context in which they were made,'" which we will not do. Bly v. Commonwealth, 55 Va. App. 1, 13, 682 S.E.2d 556, 562 (2009) (quoting Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977)). While we acknowledge that the court referred to the probability

that the children would be in danger if appellant drove off the lot, we find the record overwhelmingly shows appellant's disregard for her children's welfare without consideration of this additional factor.

When an appellant challenges on appeal the sufficiency of the evidence to sustain her conviction, the appellate court has a duty to examine all the evidence that tends to support the conviction. Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005). This examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling. In determining whether there is evidence to sustain a conviction, an appellate court must consider all the evidence admitted at trial that is contained in the record. Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008).

We evaluate the totality of the trial court's statement and do not isolate any individual comment. Here, the court properly appraised all the evidence and found that appellant was highly intoxicated on alcohol and Ambien, drove to the parking lot in a semi-conscious, impaired condition, and "did not have the ability to control her motor skills and use her mature judgment." The court concluded, "with all of these circumstances, it seems to me that it's very clear that [appellant's] conduct created a probability of injury or death to the children." Thus, while the court commented on appellant's intent to drive out of the parking lot, the record clearly demonstrates that the court considered all the facts and circumstances surrounding appellant's behavior and convicted appellant based upon the totality of the circumstances.

### Ambien

Appellant contends the trial court erred in finding she intentionally ingested Ambien with knowledge of the effects of the medication. The evidence is undisputed that Dr. Edinboro analyzed a sample of appellant's blood and determined that she had ingested the prescription drug Ambien. She maintains that because she told police that she had taken the Paxil, the

- 15 -

evidence showed that she must have taken the Ambien by accident. The trial court rejected this argument.

"'Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong.'" Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997)); see also Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004) (holding that where the factfinder has rejected the hypothesis of innocence, "that determination cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion").

The trial court was not required to accept the story appellant gave to the police. "The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995). In light of appellant's other false or irrational statements that afternoon, the trial court reasonably rejected appellant's claim that she ingested Ambien by mistake.

Appellant also suggests that even if she did have a valid prescription for Ambien, it is unreasonable that she would know all of the effects. The trial court was also free to reject this argument. By not believing appellant's statement that she thought she had taken Paxil, the trial court could reasonably conclude that appellant purposefully took Ambien knowing what effect it would have on her. Unlike other medications, drowsiness is not a side effect of Ambien; it is the purpose of taking the medication. It defies human experience that one who takes a sleeping pill would not know what effects that medication would have on their ability to drive. One need not read the printed warnings to know the effects of Ambien. The trial court did not err in finding

appellant ingested Ambien knowing it would impair her ability to drive and supervise her children.

## CONCLUSION

For the foregoing reasons, we find the trial court did not err in finding appellant guilty of felony child neglect. Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>