COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia

KEISHAWN LOMANT WHITFIELD

v.      Record No. 0243-10-2

COMMONWEALTH OF VIRGINIA                          OPINION BY
                                                 JUDGE D. ARTHUR KELSEY
KEISHAWN LAMONTE WHITFIELD                         DECEMBER 28, 2010

v.      Record No. 0242-10-2

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Beverly W. Snukals; Bradley B. Cavedo, Judges[*]

John W. Luxton (John W. Luxton, P.C., on briefs), for
appellant.

Jennifer C. Williamson, Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on briefs), for
appellee.


The trial court found Keishawn Lamonte Whitfield guilty of involuntary manslaughter

and felony child neglect. Based on these convictions, the trial court revoked an earlier order

deferring a disposition on a cocaine possession charge and entered a final order convicting

Whitfield of that offense. On appeal, Whitfield argues the evidence was insufficient to prove

involuntary manslaughter and felony child neglect, and thus, equally insufficient to trigger the

revocation of the earlier deferred disposition. We disagree and affirm.

_____

[*] Judge Snukals entered the final order in Record No. 0243-10-2 convicting Whitfield of
involuntary manslaughter and felony child neglect. Judge Cavedo entered the final order in
Record No. 0242-10-2 revoking Whitfield's deferred disposition and convicting him of cocaine
possession.

I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

In addition, "an appellate court's 'examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling.'" Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (quoting Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008)). Instead, "an appellate court must consider all the evidence admitted at trial that is contained in the record." Id. (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586); see also Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010).

Viewed from this perspective, the record shows the trial court in January 2009 found sufficient evidence to convict Whitfield of cocaine possession. Pursuant to Code § 18.2-251, the court withheld entry of a conviction order and deferred the disposition of the charge for one year. The deferred disposition order required, among other things, that Whitfield undergo a substance abuse assessment and be of good behavior.

During this time, Whitfield worked as a van driver for his mother's daycare center. On July 6, 2009, at about 7:15 a.m., Whitfield drove to Andrea Johnson's home to pick up her thirteen-month-old son, Andrew, for transport to the daycare. Johnson handed Andrew, already strapped into his car seat, and a diaper bag to Whitfield, who placed them in the van. Whitfield then secured Andrew's car seat in the first row bench seat directly behind his own seat.

Whitfield picked up several other children that morning for transport to his mother's daycare. The sides and rear of the van were covered with windows.

When he arrived at the daycare, Whitfield unloaded all of the children except Andrew. Whitfield left Andrew still secured in the car seat on the front row bench seat of the van. Whitfield understood it was his responsibility to ensure no children remained in the van. He normally checked the van for this very purpose, Whitfield testified at trial, but admittedly did not do so on this occasion. The daycare had also trained Whitfield to fill out a logbook in the van to help him keep track of the children he picked up and dropped off at the daycare. Whitfield did not use the van logbook that day, nor had he used it for several months beforehand. Instead, Whitfield admitted, he chose to rely solely on his memory.

A separate logbook was maintained inside the daycare for Whitfield to confirm the names of each child he delivered. Whitfield entered the daycare and dropped off Andrew's diaper bag, but did not fill out the daycare logbook as he had been trained to do. Whitfield then walked back to the van and drove home unaware Andrew was still in the car seat directly behind him. Whitfield parked the van outside his residence and went inside, leaving Andrew in the van, still strapped into the car seat. Though still early in the morning, Whitfield went to sleep and slept all day. Not wanting to be disturbed, he turned off his cell phone ringer prior to going to sleep.

Andrew remained strapped in his car seat in the van all day. All of the van's windows and doors were closed. The outside temperature reached 84 degrees. Late in the afternoon, Whitfield awoke and noticed he had missed five calls on his cell phone from his mother, the owner of the daycare. After calling her back at about 4:20 p.m., Whitfield looked in the van and found Andrew. He was dead.

A medical examiner testified Andrew died of environmental heat exposure. Within 60 minutes, the examiner explained, the temperature inside a vehicle will climb to 40 degrees higher

than the outside temperature when the outside temperature is between 72 and 96 degrees. Andrew's body temperature had reached at least 106 degrees, which the examiner testified would typically result in convulsions, seizure, and death.

When interviewed by police, Whitfield offered only one explanation — he was "moving too fast" that morning. He did not say why he was in such a hurry. The prosecutor argued the most reasonable inference was that Whitfield was "rushed to get home to go to sleep."

At trial, Whitfield moved to strike the evidence claiming the evidence showed only a single act of simple negligence. In response, the prosecutor argued: "It's not one simple mistake, it's an ongoing series of choices that he made which shows the reckless or indifferent disregard for Andrew." The trial court agreed and denied the motion to strike. After Whitfield offered no evidence in his defense, the trial court heard closing arguments and found him guilty of involuntary manslaughter in violation of Code § 18.2-36 and felony child neglect in violation of Code § 18.2-371.1(B).

Based upon these convictions, the trial court revoked the earlier deferred disposition of Whitfield's cocaine possession charge and entered a final conviction order under Code § 18.2-251 (authorizing a trial court to "enter an adjudication of guilt" on a charge deferred for later disposition). Whitfield objected to the cocaine conviction on the ground that the predicate offenses rested on insufficient evidence and would not survive appellate review.

## II.
### A. STANDARD OF APPELLATE REVIEW

We examine a trial court's factfinding "with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). An appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280,

- 4 -

282 (2009) (emphasis in original) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 318-19 (1979)).[1]

Instead, the only "relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Sullivan v. Commonwealth</u>, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010) (citing <u>Jackson</u>, 443 U.S. at 319). We are "not permitted to reweigh the evidence," <u>Nusbaum v. Berlin</u>, 273 Va. 385, 408, 641 S.E.2d 494, 507 (2007), because appellate courts have no authority "to preside *de novo* over a second trial," <u>Haskins v. Commonwealth</u>, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004).

This deferential standard "applies not only to the historical facts themselves, but the inferences from those facts as well." <u>Clanton v. Commonwealth</u>, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*) (citation omitted); <u>see also</u> <u>Sullivan</u>, 280 Va. at 676, 701 S.E.2d at 63-64. Thus, a factfinder may "draw reasonable inferences from basic facts to ultimate facts," <u>Haskins</u>, 44 Va. App. at 10, 602 S.E.2d at 406 (citation omitted), unless doing so would push "into the realm of *non sequitur*," <u>Thomas</u>, 48 Va. App. at 608, 633 S.E.2d at 231 (citation omitted).

In a bench trial, a trial judge's "major role is the determination of fact, and with experience in fulfilling that role comes expertise." <u>Haskins</u>, 44 Va. App. at 11, 602 S.E.2d at 407 (citation omitted). Consequently, "we do not substitute our judgment for that of the fact finder," <u>Hamilton</u>, 279 Va. at 105, 688 S.E.2d at 175, "even if our opinion were to differ," <u>Ferguson v. Commonwealth</u>, 51 Va. App. 427, 435, 658 S.E.2d 692, 696 (2008) (*en banc*). "If reasonable jurists could disagree about the probative force of the facts, we have no authority to

---

[1] <u>See also</u> <u>Prieto v. Commonwealth</u>, 278 Va. 366, 399, 682 S.E.2d 910, 927 (2009); <u>Williams</u>, 278 Va. at 193, 677 S.E.2d at 282; <u>McMillan v. Commonwealth</u>, 277 Va. 11, 19, 671 S.E.2d 396, 399 (2009); <u>Jones v. Commonwealth</u>, 277 Va. 171, 182, 670 S.E.2d 727, 734 (2009); <u>Maxwell v. Commonwealth</u>, 275 Va. 437, 442, 657 S.E.2d 499, 502 (2008).

substitute our views for those of the trial judge." Campbell v. Commonwealth, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002).

## B. SUFFICIENCY OF THE EVIDENCE — CRIMINAL NEGLIGENCE

The trial court convicted Whitfield of involuntary manslaughter in violation of Code § 18.2-36 and felony child neglect in violation of Code § 18.2-371.1(B). Both charges require a *mens rea* showing of criminal negligence. See Kelly v. Commonwealth, 42 Va. App. 347, 355-56, 592 S.E.2d 353, 357 (2004). On appeal, Whitfield argues no rational factfinder could conclude he was criminally negligent. We disagree.

Under Virginia law, criminal negligence occurs "when acts of a wanton or willful character, committed or omitted, show a *reckless or indifferent disregard* of the rights of others, under circumstances reasonably calculated to produce injury, *or which make it not improbable that injury will be occasioned*, and the offender knows, or is charged with the knowledge of, the probable result of his or her acts." Noakes v. Commonwealth, 280 Va. 338, 346, 699 S.E.2d 284, 288 (2010) (emphasis added, brackets and internal quotation marks omitted) (quoting Brown v. Commonwealth, 278 Va. 523, 528-29, 685 S.E.2d 43, 46 (2009)); see also Carosi v. Commonwealth, 280 Va. 545, 556, 701 S.E.2d 441, 447 (2010).

In cases involving children, "[t]his reckless disregard standard can be 'shown by conduct that subjects a child to a substantial risk of serious injury, as well as to a risk of death, because exposure to either type of risk can endanger the child's life.'" Barnes v. Commonwealth, 47 Va. App. 105, 111, 622 S.E.2d 278, 281 (2005) (quoting Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004)). It is not only the nature of the act or omission that matters. The vulnerability of the victim plays an equally important role in the culpability calculus. A "course of conduct" that satisfies the ordinary care standard when directed toward an adult "might be gross, and even criminal, negligence toward children of tender years." Noakes

v. Commonwealth, 54 Va. App. 577, 591, 681 S.E.2d 48, 55 (2009) (*en banc*) (quoting in parenthetical Lynchburg Cotton Mills v. Stanley, 102 Va. 590, 594, 46 S.E. 908, 909 (1904)), aff'd, 280 Va. 338, 699 S.E.2d 284 (2010).  It necessarily follows that "greater precaution" must be taken when a course of conduct puts a young child at risk of harm.  Id.[2]

When determining a defendant's culpability, we apply an "objective standard" and ask if "the defendant 'either knew or *should have known* the probable results of his/her acts.'"  Noakes, 280 Va. at 346, 699 S.E.2d at 289 (brackets omitted and emphasis added) (quoting Riley v. Commonwealth, 277 Va. 467, 483-84, 675 S.E.2d 168, 177 (2009)).  "Thus, the Commonwealth need not prove that an accused actually knew or intended that [his] conduct would likely cause injury or death, but rather that the accused should have known [his] acts created a substantial risk of harm."  Wood v. Commonwealth, 57 Va. App. ___, ___, ___ S.E.2d ___, ___ (Nov. 23, 2010) (citing Noakes, 280 Va. at 346, 699 S.E.2d at 289).  "Such a determination necessarily will be specific to the circumstances of each case and, thus, whether a defendant's conduct is criminally negligent is usually a question for the trier of fact, unless reasonable minds could not differ."  Carosi, 280 Va. at 556, 701 S.E.2d at 447; see also Wood, 57 Va. App. at ___, ___ S.E.2d at ___.

Governed by these principles, we hold Whitfield's actions cannot be dismissed as simply a momentary, inadvertent act of ordinary negligence.  He displayed an inexcusable pattern of reckless indifference:

> ▪ Whitfield failed to look for Andrew after unloading the other children from the van — despite having personally secured

---

[2] Whitfield negligently created the danger to Andrew and thus had an affirmative duty to safeguard him from it.  See 1 Wayne R. LaFave, Substantive Criminal Law § 6.2(a)(5), at 441 (2d ed. 2003) ("The clearest case of such a duty is that in which the defendant is himself at fault in creating the danger."); Francis Wharton, Criminal Law § 130(a), at 151 (10th ed. 1896) ("So if I put another person in a position where injury will accrue to him, if I omit to relieve him, should I withdraw from him the care I undertook to give him, I am indictable for the injury I cause by the omission."); id. § 359, at 366 ("To place a helpless infant child in such a position that it cannot live is . . . manslaughter if the desertion be negligent.").

him, strapped into his car seat, in the first passenger row of the van earlier that morning.

- Both on this occasion and for months beforehand, Whitfield did not use the van logbook specifically designed to ensure that this kind of tragedy would never occur. He instead chose to rely solely on his memory.

- Whitfield took Andrew's diaper bag inside the daycare without confirming that Andrew was also safely inside.

- Whitfield did not use the logbook inside the daycare, ignoring an additional fail-safe measure that would have ensured Andrew's safety.

- After exiting the daycare, Whitfield did not double check to make sure all children were safely inside the daycare.

- Whitfield drove home, completely oblivious to Andrew sitting directly behind him.

- After returning home, Whitfield again did not check to make sure the van was empty — the final and fatal missed opportunity to see Andrew plainly visible inside the van.

These facts show Whitfield *created* the danger by strapping Andrew, a thirteen-month-old baby, into the van and leaving him unattended on a hot day with little or no chance of being rescued. Whitfield silenced his cell phone, making it impossible for anyone to reach him when questions later arose concerning Andrew's delivery. Whitfield then slept *all day* — a poignant fact leading to the reasonable inference that lack of sleep compromised his alertness that morning. Even so, he nonetheless assumed the responsibility of caring for very young children and then rushed through his morning tasks so that he could return home and go back to sleep.

In short, Whitfield's acts and omissions displayed "a reckless or indifferent disregard" for Andrew's safety under circumstances which made it "not improbable" that Andrew would suffer injury or death. Noakes, 280 Va. at 346, 699 S.E.2d at 288. Given the heat of the day and the obvious risk of heat exposure to a child incapable of extricating himself, Whitfield could be "charged with the knowledge," id., that his recklessness could cost Andrew his life.

- 8 -

### C. ENTERING CONVICTION ON DEFERRED DISPOSITION

Following Whitfield's convictions for involuntary manslaughter and felony child neglect, the trial court revoked the deferred disposition of his cocaine possession charge and entered a final conviction order. On appeal, Whitfield argues the trial court should have taken the "disposition of [this] drug case under advisement" while the underlying convictions for involuntary manslaughter and felony child neglect were on appeal. See Appellant's Br. at 1. Because we affirm Whitfield's underlying convictions, the trial court was undoubtedly justified in revoking the deferred disposition of the cocaine possession charge and entering "an adjudication of guilt" under Code § 18.2-251. This conclusion moots Whitfield's complaint about the trial court's failure to take the deferred disposition under advisement. See Patterson v. Commonwealth, 12 Va. App. 1046, 1047-48, 407 S.E.2d 43, 44 (1991); see also Hess v. Commonwealth, 17 Va. App. 738, 741, 441 S.E.2d 29, 31 (1994).

### III.

In sum, the evidence supports the trial court's finding that Andrew's death was the result of Whitfield's criminal negligence. We thus affirm Whitfield's convictions for involuntary manslaughter and felony child neglect. It follows that the trial court also did not err in revoking the deferred disposition of Whitfield's cocaine charge and entering a final conviction order.

Affirmed.