COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Alston and Senior Judge Coleman
Argued at Richmond, Virginia


MEGAN L. CLARK

                                     MEMORANDUM OPINION[*] BY
v.       Record No. 1146-11-2            JUDGE ROSSIE D. ALSTON, JR.
                                          MAY 15, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Cheryl V. Higgins, Judge

Michael J. Hallahan, II, for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.


Megan L. Clark (the defendant) appeals her conviction for felony child neglect in

violation of Code § 18.2-371.1(B). On appeal, the defendant argues that the evidence was

insufficient to show that she committed an act or omission in the care of a child which was so

gross, wanton, and culpable as to show reckless disregard for human life. For the following

reasons, we agree and reverse the defendant's conviction.

## I. Background[1]

"On appeal, we review the evidence in the 'light most favorable' to the Commonwealth."

Whitfield v. Commonwealth, 57 Va. App. 396, 400, 702 S.E.2d 590, 592 (2010) (quoting

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)). "This deferential

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of
this appeal.

standard 'applies not only to the historical facts themselves, but the inferences from those facts as well.'" Id. at 404, 702 S.E.2d at 593 (quoting Clanton v. Commonwealth, 53 Va. App. 561, 566, 673 S.E.2d 904, 907 (2009) (*en banc*)).

So viewed, the evidence indicated that on Saturday, June 19, 2010, at 8:40 a.m., Albemarle Police Officer Trevor Ross received a call that an unattended three-year-old child had been found at a busy intersection. The child was first observed wandering towards the intersection completely naked.

Officer Ross, joined by Officer Laura Proffitt, took the child to a nearby trailer park to see if they could determine where the child lived. After being directed toward a certain trailer, the officers approached and saw the child's identical twin brother unsupervised on the front deck. The officers noticed that there was an intact child gate but observed the brother attempting to climb over it. The officers then began "calling out" that they were the police and beating on the side of the trailer. Two to three minutes later, the defendant and her boyfriend, Estanislao Dominguez, emerged from the trailer in response to the officers' calls.

The defendant acknowledged that the child found near the intersection was her son and that he knew how to climb over the child gate on the trailer's front deck. She informed Officer Ross that she and Dominguez had been at a party the previous night and had not gotten back to the trailer until 6:00 a.m. The defendant stated that Dominguez's parents had been watching the children when they returned to the trailer and that she was unaware that the parents had left in the morning. The defendant and Dominguez were asleep when the officers attempted to rouse them. Officer Ross then arrested the defendant for felony child neglect in violation of Code § 18.2-371.1.

At trial, Dominguez testified that on June 18, 2010, the defendant, Dominguez, and Dominguez's brother, Jorge, had gone to a party, returning to the trailer between 5:00 and

6:00 a.m. the next morning. Dominguez and the defendant returned to the trailer later than they had planned because they had driven to Orange, Virginia, to assist Dominguez's brother-in-law, who had been arrested after the party. According to Dominguez, the defendant did not have anything to drink that night. When Dominguez and the defendant returned home, Dominguez's parents, Jorge, and the children were asleep. Dominguez testified that the defendant checked on the children and then Dominguez and the defendant went to sleep in a small bedroom. Dominguez did not remember where the children were sleeping, but knew that they were not in the room where Dominguez and the defendant slept. Dominguez and the defendant did not wake up until the police roused them. Dominguez testified that he had never "known the children to be able to get out . . . of the house."

Jorge testified that he did not see the defendant or Dominguez drink alcohol at the party and that he was asleep when they returned home. He testified that he woke up around 7:30 a.m. the next morning and left the trailer around 8:00 a.m. By 8:00 a.m., Dominguez's parents had already left the trailer; Dominguez's mother began work at 7:00 a.m. and Dominguez's father had "left earlier." Jorge testified that both he and Dominguez knew that their parents had to go to work that morning. When Jorge left, the children were playing in the living room, and the defendant and Dominguez were asleep in an adjoining room with the door open. According to Jorge, the children typically woke up early and "at the time one wakes up, they wake up to play." As he left, Jorge closed and locked the trailer door, which did not have a deadbolt, and closed the child gate on the outside deck.

The trial court found the defendant guilty of violating Code § 18.2-371.1, finding that the defendant "knew that the children could, at the very least, get over the gate" and that the children were "left on their own . . . with no supervision[]." This appeal followed.

II. Analysis

In evaluating the sufficiency of the evidence, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Whitfield, 57 Va. App. at 403, 702 S.E.2d at 593 (quoting Williams v. Commonwealth, 278 Va. 190, 193, 667 S.E.2d 280, 282 (2009)). "Instead, the only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63 (2010)). Here, the evidence is essentially uncontroverted, and we appropriately defer to the learned trial court's evidentiary determinations.

Code § 18.2-371.1(B)(1) provides:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton and culpable as to show a reckless disregard for human life shall be guilty of a Class 6 felony.

To sustain a conviction under Code § 18.2-371.1(B)(1), "[t]he Commonwealth . . . must prove that the act or omission is 'so gross, wanton and culpable as to show a reckless disregard for human life.'" Wood v. Commonwealth, 57 Va. App. 286, 297, 701 S.E.2d 810, 815 (2010) (quoting Code § 18.2-371.1(B)(1)). "'[W]hether the required intent exists is generally a question for the trier of fact.'" Haywood v. Commonwealth, 20 Va. App. 562, 565-66, 458 S.E.2d 606, 608 (1995) (quoting Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977)).

> "The word 'gross' means 'aggravated or increased negligence' while the word 'culpable' means 'deserving of blame or censure.'" Cable [v. Commonwealth], 243 Va. [236,] 240, 415 S.E.2d [218,] 220 [(1992)] (quoting Bell v. Commonwealth, 170 Va. 597, 611, 195 S.E. 675, 681 (1938)). Gross negligence amounts to criminal negligence "when acts of a wanton or willful character, committed or omitted, show 'a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce

injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his [or her] acts.'" Brown [v. Commonwealth], 278 Va. [523,] 528-29, 685 S.E.2d [43,] 46 [(2009)] (quoting Riley v. Commonwealth, 277 Va. 467, 484, 675 S.E.2d 168, 177 (2009)). . . .

Noakes v. Commonwealth, 280 Va. 338, 346, 699 S.E.2d 284, 288 (2010). "Thus, the Commonwealth need not prove that an accused actually knew or intended that her conduct would likely cause injury or death, but rather that the accused should have known her acts created a substantial risk of harm." Wood, 57 Va. App. at 298, 701 S.E.2d at 815 (citing Noakes, 280 Va. at 346, 699 S.E.2d at 289). In determining whether a willful act of gross negligence occurred, this Court looks to the totality of the circumstances. Id. at 302, 701 S.E.2d at 818.

The defendant argues that her conduct in the instant case did not rise to the level of gross negligence. We agree. The defendant left her children in the care of Dominguez's parents when she and Dominguez went out for the night. Upon returning home, the defendant checked on the children and went to sleep in another room, with the door open. There was no evidence that the defendant was intoxicated. Although the evidence showed that Dominguez was aware that his parents planned to leave the trailer early in the morning for work that Saturday, there was no evidence that the defendant was aware of the parents' plans to leave the trailer. In addition, there was no evidence that anyone in the trailer awakened the defendant to inform her that all of the other adults had left or were leaving. Finally, although the evidence showed that the defendant was aware that her children were capable of climbing over the child gate on the trailer's deck, there was no evidence that the defendant was aware that the children were capable of unlocking and opening the door to the trailer to gain access to the trailer's deck.

The case at bar is analogous to Morris v. Commonwealth, 272 Va. 732, 636 S.E.2d 436 (2006). In that case, Morris' two small children, between the ages of four and six years old, were found playing in the nearby woods at approximately 11:15 a.m. When police arrived at Morris'

trailer, they initially received no response to their knocks and announcements of their presence. When Morris finally responded to the officers, she told them she had been sleeping and then falsely claimed she was the children's aunt. Significantly, Morris also told the officers that the children had gotten out of the trailer a few days before and a neighbor had returned them home. There was no evidence that Morris was under the influence of drugs or alcohol, though she did admit at trial that she had a "drug problem." Morris was convicted of felony child neglect in violation of Code § 18.2-371.1(B). On appeal, the Supreme Court of Virginia reversed her conviction, holding that the evidence was insufficient to prove a willful act or omission in the care of her children that was so gross, wanton, and culpable as to show a reckless disregard for their lives. Id. at 740, 636 S.E.2d at 440.

Both Morris and the case at bar involve young children who escaped the confines of their homes while their mothers were asleep, thereby exposing themselves to danger. In neither case was there any evidence that the mothers were under the influence of drugs or alcohol. Cf. Wood, 57 Va. App. at 299, 701 S.E.2d at 816 (affirming the appellant's conviction under Code § 18.2-371.1(B)(1) where she "had consumed a significant amount of alcohol, had injected a sleep-inducing drug, and as a result was severely impaired"). Moreover, the defendant's conduct here is arguably even *less* culpable than Morris' conduct. Unlike the defendant, Morris was aware that her children were capable of getting out of the trailer since they had done so only a few days before the incident involved in that case. As noted earlier, although the evidence showed that the defendant was aware that her children were capable of climbing over the child gate on the trailer's deck, there was no evidence that the defendant was aware that the children were capable of unlocking and opening the door to the trailer to gain access to the trailer's deck.

While the defendant's children were arguably in a more perilous situation than Morris' because the trailer in the instant case was located near a busy intersection, there was no evidence

that the defendant knew that the children were capable of escaping the trailer when its door was closed and locked. Thus, the defendant did not know that the children were exposed to the potential danger of the intersection. The defendant did not leave her children in an obviously dangerous location, such as at the intersection itself, and fail to provide for their care or safety. Cf. Kelly v. Commonwealth, 42 Va. App. 347, 592 S.E.2d 353 (2004) (affirming the appellant's conviction under Code § 18.2-371.1(B)(1) where he left his twenty-one-month-old child in a vehicle and made no provision for her care, nourishment, or safety over the course of several hours).

The defendant left her children in the safety of the trailer, under the supervision of Dominguez's parents. There was no evidence that the defendant knew that the parents had left the trailer or that the children were capable of unlocking and opening the trailer door. While we acknowledge that a parent cannot haphazardly delegate her parental responsibilities and must take precautions when there is a known danger to her children, the defendant's conduct in the instant case simply did not rise to the level of gross negligence. It is entirely understandable in the context of these circumstances that a trier of fact could be critically concerned about the predicament in which this child was ultimately placed. However, the legal assessment required to find the defendant criminally responsible requires wanton or willful actions by the defendant, or proof of a reckless or indifferent disregard for the welfare of her child. Noakes, 280 Va. at 346, 699 S.E.2d at 288. Here the evidence simply does not rise to this level. Since the evidence was insufficient to sustain her conviction as a matter of law, it must be reversed.

Reversed.