COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Alston and Russell
Argued at Richmond, Virginia

UNPUBLISHED

COWARREN NATHANIEL WIGGINS

MEMORANDUM OPINION* BY
v.        Record No. 0632-15-2        JUDGE ROSSIE D. ALSTON, JR.
APRIL 26, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

(Marlene A. Harris; Law Office of Marlene A. Harris, on brief),
for appellant. Appellant submitting on brief.

Rosemary V. Bourne, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Cowarren Nathaniel Wiggins (appellant) appeals his convictions of possession of a

controlled substance with intent to distribute, in violation of Code § 18.2-248.1, and felony child

neglect in violation of Code § 18.2-371.1(B).[1]  Specifically, appellant argues that the evidence in

this bench trial was insufficient to support either of his convictions.  We affirm in part and

reverse in part.

I.  Background

Appellant was arrested on November 15, 2013, after Virginia State Police (VSP) and the

Dinwiddie County Sheriff's Department executed a search warrant at appellant's home located at

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of possession of a firearm by a nonviolent convicted felon
and possession of ammunition for a firearm by a convicted felon in violation of Code
§ 18.2-308.2.  This Court, by a *per curiam* order, denied appellant's appeal of those two
convictions.

2518 Brunswick Avenue in Dinwiddie County. VSP entered the house first and secured the scene. Dinwiddie Sheriff's Department officers waited outside for several minutes and proceeded to enter the house after VSP secured it.

At appellant's trial, Investigator Parker of the Dinwiddie County Sheriff's Department testified. Parker testified that when he entered the house, appellant was sitting on the couch with his son. Parker found that when VSP first entered, both appellant and his son were asleep in the house. While assessing the scene, Parker observed bullets inside a ziplock bag lying on top of a mattress with sheets on it in a bedroom. After his observation of the whole house and a conversation with appellant, Parker determined that the bedroom in which the bullets were found belonged to appellant. Another bedroom in the house had toys in it; however there was no testimony or evidence as to whether the second bedroom was appellant's son's bedroom or if his son had been found sleeping in that room when VSP entered the house.

Parker also found a loaded Ruger 40 caliber handgun "on the floor right beside the bed" in appellant's room and a loaded "Bushmaster 223 assault rifle with the serial number obliterated off of it . . . [l]ocated under the couch in the living room." When Parker entered the house, the firearm under the couch was not visible. The firearm in appellant's bedroom was on the floor on the side of the bed furthest from the door to the room and not visible from the doorway. Parker testified that the firearms were not locked up in any way and that someone walking by could have picked them up, pulled the trigger, and fired the firearms.

Additionally, Parker found $1600 in "assorted currency" in appellant's bedroom and $51 in a wallet belonging to appellant that was found in the living room. Parker did not note the denominations of the currency, but testified that if it had been "assorted in fives, tens, twenties it would definitely be associated with drug sales." He did testify that different locations of smaller and larger amounts of currency were "consistent with what you would see with drug sellers."

Parker also found "[s]everal baggies of plant-like material which was known to be marijuana by the state lab" located in the kitchen inside of a box "of little bags of potatoe [sic] chips." The marijuana was in one larger bag with smaller, individually wrapped baggies inside of it. When Parker saw the marijuana, it was in the potato chip box on the floor in the kitchen.

Parker testified that the manner in which the assorted currency was stored and the packaging of the marijuana were inconsistent with personal use of the marijuana. He also testified that the presence of multiple firearms along with the marijuana was a factor that was inconsistent with the personal use of marijuana and consistent with the sale of marijuana. Specifically, Parker testified that the presence of a firearm and cash within hands-reach of appellant's bed, the extra ammunition also in close range, the location of the second firearm in the living room allowing for its quick retrieval, and the presence of the marijuana in the kitchen, also easily accessible, were all factors consistent with drug trafficking.

Investigator Shifflett of the Dinwiddie County Sheriff's Department also testified. Shifflett was in charge of photographing and collecting evidence found in the house. He collected a bag of BHA bullets and Smith and Wesson 40 caliber bullets from the master bedroom, two Verizon Samsung cell phones found on the bed in the master bedroom, both firearms, the marijuana, $68.02 in U.S. currency, a box of American Eagle ten millimeter bullets found in the front bedroom of the residence, appellant's wallet found in the living room, a 45 caliber bullet found in a jewelry box in the master bedroom, and a bag of firearm accessories (holsters, etc.) found in the front bedroom. Shifflett testified that the Ruger firearm did have a safety but did not recall if the safety was on. He did testify that the guns were loaded and that all anyone would need to do to discharge the firearm was to pull the trigger.

At the conclusion of the Commonwealth's case, appellant moved to strike the Commonwealth's evidence, arguing that the Commonwealth failed to prove "where these items

were located when the search warrant was executed when [VSP] entered the house." Appellant argued that "the Commonwealth has been unable to present any evidence today as to where [appellant] was at the time entry was made or where any of the items were located." Appellant also contended that there was evidence that the items found were manipulated based on the conflicting testimony of the locations of various items by different detectives. As to the child neglect, appellant argued that it must fail because "we don't know where the child was and we don't know where the items were." The trial court denied appellant's motion to strike.

At the conclusion of the trial, the trial court found appellant guilty and noted in its findings that it believed that all of the items recovered from the house were found in the same place they were located when VSP entered the house and that there was no evidence that VSP "shuffled everything around." Further, the trial court found that the existence of the ammunition, the gun within reach of appellant in his bedroom, the assault weapon under the couch in the living room, and Parker's testimony that the marijuana packaging was inconsistent with personal use, were factors that, when combined, sufficiently proved appellant had constructive possession of the marijuana with intent to distribute. Moreover, the trial court held that "I think considering the fact that you have two loaded guns lying around that is sufficient for the child endangerment charge."

The trial court sentenced appellant to a total of eighteen years' incarceration for all four of his convictions. This appeal followed.

## II. Analysis

Appellant's rather lengthy assignment of error, when stripped to its core, presents two issues for this Court's consideration on appeal. First, whether the evidence was sufficient to convict appellant of possession with intent to distribute a controlled substance, and second, whether the evidence was sufficient to convict appellant of felony child neglect. Appellant's

- 4 -

specific argument as to both issues centers on his assertion that the Commonwealth failed to prove the physical location of the firearms, ammunition, marijuana, currency, appellant, and his son when VSP entered the house. Essentially, appellant argues that the Commonwealth could not have sufficiently proved that he had knowledge of the nature and character of the marijuana or the firearms, because it did not prove where these items were in relation to appellant or his son when law enforcement first entered the house.

> To support a conviction based upon constructive possession [of illegal drugs], the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the defendant was aware of both the presence and character of the substance and that it was subject to [his] dominion and control.

Carosi v. Commonwealth, 280 Va. 545, 554, 701 S.E.2d 441, 446 (2010) (quoting Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986)).

> Ownership or occupancy . . . of premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant exercised dominion and control over items . . . on the premises in order to prove that the owner or occupant constructively possessed the contraband; however, ownership or occupancy alone is insufficient to prove knowing possession of drugs located on the premises.

Burchette v. Commonwealth, 15 Va. App. 432, 435, 425 S.E.2d 81, 83 (1992) (citing Code § 18.2-250; Behrens v. Commonwealth, 3 Va. App. 131, 135, 348 S.E.2d 430, 432 (1986)). The simple question to be answered when resolving this issue is whether appellant possessed the requisite knowledge of the nature and character of the marijuana found inside of a potato chip box in the kitchen of his house.

> [I]n order for ownership or occupancy of property . . . to be sufficient to support the inference that the owner or occupant also possessed contraband that was located on the property . . . , the owner or occupant must be shown to have exercised dominion and control over the premises and to have known of the presence, nature, and character of the contraband at the time of such ownership or occupancy.

- 5 -

Id. at 435, 425 S.E.2d at 83-84 (citing Gillis v. Commonwealth, 215 Va. 298, 301-02, 208 S.E.2d 768, 770-71 (1974)).  Ultimately, "[k]nowledge of the presence and character of the controlled substance may be shown by evidence of the acts, statements or conduct of the accused." Lane v. Commonwealth, 223 Va. 713, 716, 292 S.E.2d 358, 360 (1982) (quoting Eckhart v. Commonwealth, 222 Va. 447, 450, 281 S.E.2d 853, 855 (1981)).

In order to find that appellant constructively possessed the marijuana found in the kitchen, the Commonwealth was required to show some act, statement, or conduct of appellant that, combined with his ownership and occupancy of the house, sufficiently proved that he had knowledge of the nature and character of the marijuana.  We agree with the Commonwealth that the evidence was sufficient to prove that appellant possessed the marijuana with intent to distribute it.  Investigator Parker found evidence of drug distribution throughout appellant's house.  While the marijuana itself was found in the kitchen, two firearms were found in two separate rooms in the house, one within hands-reach of appellant in his bedroom.  In addition, a large amount of cash was found in appellant's bedroom.  Furthermore, Parker provided expert testimony that the presence of loaded firearms and large amounts of cash was consistent with drug distribution.  When combined with appellant's ownership and occupancy of the house and the presence of the marijuana in the kitchen, the trial court could have reasonably found that appellant possessed the marijuana with intent to distribute it.

However, with respect to the child neglect conviction, we agree with appellant that the evidence was insufficient to support it.  Appellant was convicted under Code § 18.2-371.1(B)(1), which provides that

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony.

"[T]o support a conviction for felony child neglect, the Commonwealth must establish that the defendant, through [his] willful act or omission, created a situation placing the child at risk of actual physical harm." Jones v. Commonwealth, 46 Va. App. 713, 718, 621 S.E.2d 676, 679 (2005) (quoting Barrett v. Commonwealth, 268 Va. 170, 183, 597 S.E.2d 104, 110 (2004)).

"[T]he statutory element of 'reckless disregard [for human life] can be shown by conduct that subjects a child to a substantial risk of serious injury, as well as to the risk of death, because exposure to either type of risk can endanger the child's life.'" Id. at 718-19, 621 S.E.2d at 679 (quoting Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 214 (2004)). This requisite level of conduct "has come to be known as criminal negligence." Kelly v. Commonwealth, 42 Va. App. 347, 355, 592 S.E.2d 353, 357 (2004) (quoting Cottee v. Commonwealth, 31 Va. App. 398, 400, 524 S.E.2d 132, 133 (2000)). "Criminal negligence 'must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life.'" Id. at 356, 592 S.E.2d at 357 (quoting Bell v. Commonwealth, 170 Va. 597, 611, 195 S.E. 675, 681 (1938)). Essentially, criminal negligence "is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct *probably* would cause injury to another." Id. (quoting Conrad v. Commonwealth, 31 Va. App. 113, 121-22, 521 S.E.2d 321, 325-26 (1999) (*en banc*)).

In finding appellant guilty of the child neglect charge, the trial judge sitting as factfinder concluded "I think considering the fact that you have two loaded guns lying around that is sufficient for the child endangerment charge." This sole factual recitation was the foundation of the trial court's ruling. Given the facts of this case and the basis for the trial court's ruling, we cannot agree that the Commonwealth sufficiently proved that appellant acted with reckless

indifference to his son's life or that he knew his actions probably would cause injury to his son. The jurisprudence of this Court and that of the Supreme Court of Virginia provides that there must be more evidence in support of a felony child neglect conviction than simply, if ill-advisedly, having a child in a house with loaded and unlocked firearms.[2]  While reasonable minds could find serious shortcomings in appellant's method of keeping and storing his firearms in the house and determine these methods to be unwise, imprudent or irresponsible, we cannot say that appellant's conduct rose to the level of criminal negligence required to support a conviction.  Evidence of either a consistent pattern of neglect or a more imminent threat to a child's safety has been established by case law as the benchmark for criminal liability, even with respect to loaded and unlocked firearms.  See Mangano v. Commonwealth, 44 Va. App. 210, 604 S.E.2d 118 (2004) (Felony child neglect conviction reversed as evidence was insufficient to show that defendant knew that danger would ensue from asking his son to put away a loaded gun the son retrieved from defendant's bedroom rather than taking the gun away from his son immediately.  Defendant's son had been trained in gun safety, hunted for years, and had always acted responsibly with firearms.).

For example in Jones, this Court affirmed the defendant's felony child neglect conviction after the Commonwealth proved that the defendant left her young child alone in a room with a

---

[2] Rather, our jurisprudence suggests that there must be evidence that a defendant *knew* that the circumstances facing a child posed a substantial risk to the child's safety and that the defendant willfully ignored an existing danger to the child.  See, e.g., Barrett, 268 Va. 170, 597 S.E.2d 104 (evidence sufficient to support felony neglect conviction where mother knew that her daughter was jealous of her younger sibling, had tried to hurt him before, that the daughter knew how to turn on the water in the bathtub – her favorite place to play – and was able to pull her brother into the tub where he drowned while mother was asleep on the couch after staying out all night drinking alcohol); Kelly, 42 Va. App. 347, 592 S.E.2d 353 (evidence sufficient to support felony child neglect conviction where defendant left young child in a van on a hot day and over seven hours passed during which the defendant never checked to see if the child was asleep in the house and never ensured that his instructions to his other children to take the child inside were obeyed).

controlled substance. 46 Va. App. at 716-17, 621 S.E.2d at 678. Prior to executing a search warrant at the defendant's house, law enforcement conducted surveillance of the home and noted heavy foot traffic going to and from the residence. Id. at 716, 621 S.E.2d at 677-78. Additionally, officers consummated an undercover purchase of drugs at the house. Id. at 716, 621 S.E.2d at 678. Upon execution of the search warrant at defendant's home, officers found appellant in the living room with two other adults and found her son in a bedroom doing homework on a bed near a nightstand on which officers found a medicine bottle containing fourteen capsules of heroin. Id. Under the mattress below the child's head, officers found a plate dusted with cocaine residue. Id. at 716-17, 621 S.E.2d at 678. Officers found seven other children ranging in age from infancy to seven or eight years old in another room of the house, unattended. Id. at 717, 621 S.E.2d at 678. In affirming the defendant's conviction for one count of felony child neglect, the Court held that "[i]t is this drug activity, both the sale of drugs from the apartment and the presence of a controlled substance in close proximity to the child, that constitutes the willful act required by the statute." Id. at 719, 621 S.E.2d at 679. In Jones, the theory of the Commonwealth's case was that the proximity of controlled substances to the children and their presence while drug distribution was taking place constituted felony child neglect; while in the instant case, the felony child neglect charge was assessed simply from the existence of a loaded firearm in the home, and apparently nothing more.

In this case, the evidence was at best vague as to the child's location when VSP entered the house. A reasonable fact finder could infer from Parker's testimony that the child was asleep in the second bedroom where the toys were located when law enforcement first entered. The child was in the living room surrounded by VSP, Dinwiddie Sheriff's Department officials, and his father when Parker entered the house. We are unprepared to say that a loaded firearm with a child in the home *standing alone* is enough to establish criminal culpability on the part of

- 9 -

appellant. The evidence showed that one of the firearms was in appellant's room, where he was sleeping when VSP entered, and one was under the couch in the living room. There was no testimony that the gun in the living room was in plain view or that the child had ever been left unsupervised in the same room as either of the weapons when they were loaded and unlocked. While the specific facts differ, the evidence lacking in this case is the same as it was in Mangano, in that the Commonwealth failed to establish the requisite "knowledge and consciousness that injury w[ould] result from the act done." 44 Va. App. at 216, 604 S.E.2d at 121 (quoting Barrett, 268 Va. at 183, 597 S.E.2d at 111).

While evidence of drug distribution has been held sufficient to establish felony child neglect, as it was in Jones, such were not the circumstances in this case. The Commonwealth failed to put forth any evidence of controlled buys conducted in the house, surveillance showing that drug deals took place in the house while the child was present, or that any drugs or paraphernalia were in the same room as the child as there was in Jones.

While it can be suggested that appellant's choices in this situation were deplorable, feckless, and inattentive, we cannot say that in this particular case, there was sufficient evidence of such reckless disregard for his child's life that appellant could be guilty of felony child neglect.

For the foregoing reasons, we affirm appellant's conviction for possession with intent to distribute and reverse and dismiss his conviction for felony child neglect.

Affirmed in part
and reversed and dismissed in part.

- 10 -