COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, AtLee and Malveaux
Argued at Norfolk, Virginia


JAMALL ANDRE TAYLOR

             MEMORANDUM OPINION* BY
v.  Record No. 0885-22-1    JUDGE MARY BENNETT MALVEAUX
              DECEMBER 5, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

Michelle C. F. Derrico, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Jamall Andre Taylor ("appellant") was convicted of malicious

wounding in violation of Code § 18.2-51, use of a firearm in the commission of a felony in violation

of Code § 18.2-53.1, and discharging a firearm in a public place, with injury, in violation of Code

§ 18.2-280. Appellant argues that the trial court erred by denying his motion to strike and motion to

set aside the verdict, because the evidence did not support the charges. Appellant also contends that

the trial court erred by refusing an instruction on excusable self-defense. For the following reasons,

we affirm the trial court's judgment.

I. BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

On March 4, 2018, appellant asked Tony Boothe to meet him at a shopping center. During the meeting, appellant asked Boothe if he had slept with appellant's girlfriend. Appellant, who was armed with a knife, was "angry" and "foaming in the mouth." As appellant spoke with Boothe, appellant flipped the knife blade open and shut and told Boothe, "You'd better be glad I ain't bring what I wanted to bring."

The next day, appellant called Boothe, told Boothe he needed to speak with him, and asked Boothe where he was. Boothe replied that he was exercising at the YMCA. When Boothe exited the YMCA, he saw appellant arrive in a van. Appellant pulled a hood over his head, got out of the van, and approached Boothe with his hands in his pants pockets. When appellant drew within three or four feet of Boothe, he pulled out a chrome revolver and pointed it at Boothe.

Boothe went toward appellant and tackled him to the ground. Boothe tried to get the gun out of appellant's possession, but appellant fired, wounding Boothe in the chest. Boothe pinned appellant on the ground and "choke[d]" him to stop appellant from scratching Boothe's face and eyes. Eventually, Boothe pulled the gun from appellant's hand and threw it beyond appellant's reach. Boothe yelled at a bystander to seize the gun and call 911. The bystander, who had heard a gunshot and had seen blood on the two men, made the call.

When the police arrived, appellant was still pinned beneath Boothe, and Boothe was bleeding from a gunshot wound to his chest. Appellant had "what could have potentially been a grazed wound" from a gunshot to the "webbing of his thumb and forefinger." The police recovered a chrome revolver from the scene, which Boothe later identified as appellant's gun. Surveillance footage from the YMCA parking lot showed a gun in appellant's hand, Boothe

knocking appellant to the ground, the two men struggling on the ground, a large amount of blood on appellant's clothes, and Boothe throwing a gun several feet away.

At trial, appellant made a motion to strike the charges after the Commonwealth's evidence. He argued that the surveillance footage did not make it clear whether appellant was "the criminal agent" or "trying to defend himself." Appellant also argued that the evidence failed to prove he intended to maim, disfigure, or kill Boothe. After the trial court denied the motion, appellant renewed his motion without presenting evidence, asserting that the Commonwealth's own evidence proved that appellant was "enraged" when the shooting occurred because he suspected Boothe was sleeping with his girlfriend. Thus, he maintained that the evidence established that he acted in the heat of passion, precluding a finding of malice. He also argued that the evidence failed to prove that appellant, rather than Boothe, fired the gun. The trial court denied appellant's renewed motion to strike.

Appellant proffered three jury instructions related to self-defense. Instruction A states: "The defendant has claimed self-defense. To show self-defense, the defendant need not prove the claim beyond a reasonable doubt, but need only show enough evidence to raise a reasonable doubt as to whether the Commonwealth has proved every element of their case." Instruction B, or "Instruction 18," states:

> If you believe from the evidence that [appellant] was without fault in provoking or bringing on the fight, and you further believe that:
>
> 1) [Appellant] reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm, and
>
> 2) [Appellant] used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm,
>
> then he acted in self-defense, and you shall find the defendant not guilty.

Instruction C states:

> If you believe from the evidence that [appellant] was to some degree at fault in provoking or bringing on the fight, but you further believe that:
>
> (1) he retreated as far as he safely could under the circumstances in a good faith attempt to abandon the fight; and
>
> (2) he made known his desire for peace by word or act; and
>
> (3) he reasonably feared, under the circumstances as they appeared to him, that he was in imminent danger of bodily harm; and
>
> (4) he used no more force, under the circumstances as they appeared to him, than was reasonably necessary to protect himself from the perceived harm,
>
> then he shall [sic] acted in self-defense, and you shall find the defendant not guilty.

The trial court allowed Instruction B, but refused Instructions A and C.

The jury convicted appellant of malicious wounding, use of a firearm in the commission of a felony, and discharging a firearm in a public place. The trial court denied appellant's motion to set aside the verdict. This appeal followed.

## II. ANALYSIS

### A. Sufficiency of the Evidence

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting

*Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

### 1. *Identity of the Shooter*

Appellant asserts that the trial court erred by denying his motion to strike because the evidence did not prove that appellant controlled the gun when Boothe was shot. He maintains that the surveillance footage showed that "Boothe was clearly in control from the beginning of the struggle." We disagree.

"At trial, the Commonwealth bears the burden of proving the identity of the accused as the perpetrator beyond a reasonable doubt." *Cuffee v. Commonwealth*, 61 Va. App. 353, 364 (2013) (quoting *Blevins v. Commonwealth*, 40 Va. App. 412, 423 (2003)). The question of a perpetrator's identity is a factual one. *See Henderson v. Commonwealth*, 5 Va. App. 125, 130 (1987). "[A]n appellate court is 'not permitted to reweigh the evidence,'" *Coleman v. Commonwealth*, 52 Va. App. 19, 23 n.2 (2008) (quoting *Nusbaum v. Berlin*, 273 Va. 385, 408 (2007), "or 'to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion,'" *id.* (quoting *Commonwealth v. Presley*, 256 Va. 465, 466 (1998)). "A factfinder's resolution of conflicting facts, as well as competing inferences, receives 'the highest degree of appellate deference.'" *Id.* (quoting *Thomas v. Commonwealth*, 48 Va. App. 605, 608 (2006)). That deference applies to factual findings regarding properly authenticated video evidence, *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022), which "may be admitted . . . 'as "mute," "silent," or "dumb" independent photographic witnesses,'" *Donati v. Commonwealth*, 37 Va. App. 575, 579 (2002) (alteration in original) (quoting *Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992)).

Here, Boothe testified that appellant produced a revolver and pointed it at him and, when Boothe tried to seize the gun, appellant "shot the gun" and "kept squeezing" the trigger while the gun was pointed at Boothe. Boothe expressly denied shooting the gun, and testified that "[appellant] pulled the trigger" and Boothe "tussled the gun from [appellant]." Appellant presented no evidence disputing Boothe's account, and on appeal, he does not challenge the credibility of Boothe's testimony. To the extent that appellant contends that the surveillance footage conflicts with Boothe's testimony, the record does not support that contention. The footage clearly shows appellant's shirt drenched in blood before Boothe seized the gun and tossed it, permitting the rational inference that Boothe was bleeding on appellant because Boothe had been shot. The images of Boothe's injuries support this inference; a reasonable factfinder could infer that those more severe injuries, not appellant's "graze" wound, produced the copious amount of blood on appellant's shirt. The record therefore supports the jury's finding that appellant shot Boothe.

Even if the surveillance footage were subject to more than one interpretation, any issue of interpretation was a factual question for the jury to resolve. The jury viewed the surveillance footage together with Boothe's testimony and the images of Boothe's injuries, and concluded that it was appellant, not Boothe, who pulled the trigger. That finding is not plainly wrong, because the inferences required were reasonable and supported by the evidence. Accordingly, as the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant shot Boothe, the trial court did not err by denying appellant's motion to strike or his motion to set aside the verdict.

## 2. *Malice*

Appellant maintains that, even if the evidence proved he fired the gun, it also established that he "was consumed by the heat of passion from the combination of [his] jealous response and his fear while being trapped under[] . . . Boothe."

"Whether violence was completed in the heat of passion and due to a reasonable provocation is generally a question for the fact finder." *Washington v. Commonwealth*, 75 Va. App. 606, 619 (2022). "Heat of passion is a defense based on a defendant's lack of malice[,]" and "'refers to the *furor brevis* which renders a [person] deaf to the voice of reason.'" *Id.* (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "'[P]rovocation [that] reasonably produces fear' or anger, causing 'one to act on impulse without conscious reflection,'" negates malice. *Id.* (quoting *Rhodes*, 41 Va. App. at 200). Thus, "heat of passion and malice are mutually exclusive." *Id.* In order to show that a crime occurred in the heat of passion, "the evidence must prove the simultaneous occurrence of both 'reasonable provocation' and 'passion.'" *Canipe v. Commonwealth*, 25 Va. App. 629, 643 (1997). "If [the Commonwealth] demonstrates that the accused reflected or deliberated, that his passion cooled, or that there was reasonable time or opportunity for cooling, then the [offense] is attributable to malice and not heat of passion." *Lynn v. Commonwealth*, 27 Va. App. 336, 345 (1998) (alterations in original) (quoting *Miller v. Commonwealth*, 5 Va. App. 22, 25 (1987)).

Like heat of passion, whether a defendant acted with malice is a factual question. *See Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000) ("Whether malice existed is a question for the fact finder."). "Malice" refers to "the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will." *Watson-Scott v. Commonwealth*, 298 Va. 251, 255-56 (2019) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Rather, malice "denote[s] an action flowing from any wicked and corrupt motive, done with an evil mind and

purpose and wrongful intention, where the act has been attended with such circumstances as to carry in them the plain indication of a heart regardless of social duty and deliberately bent on mischief." *Id.* at 256 (quoting *Martin v. Commonwealth*, 184 Va. 1009, 1015 (1946)).

"[M]alice may be either express or implied by conduct." *Id.* (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). "[I]mplied malice encapsulates 'a species of reckless behavior so willful and wanton, so heedless of foreseeable consequences, and so indifferent to the value of human life that it supplies the element of malice.'" *Id.* (quoting *Essex*, 228 Va. at 288 (Poff, J., concurring)). It "exists where a defendant lacks the deliberate intent to kill, but the circumstances of the defendant's actions are 'so harmful that the law punishes the act as though malice did in fact exist.'" *Flanders v. Commonwealth*, 298 Va. 345, 358 (2020) (quoting *Watson-Scott*, 298 Va. at 256). "Notably, 'malice may be implied from the deliberate use of a deadly weapon.'" *Watson-Scott*, 298 Va. at 256 (quoting *Smith v. Commonwealth*, 239 Va. 243, 264 (1990)); *see also Washington*, 75 Va. App. at 621 ("Malice may be inferred 'from the deliberate use of a deadly weapon unless, from all the evidence,' there is reasonable doubt as to whether malice existed." (quoting *Avent v. Commonwealth*, 279 Va. 175, 201-02 (2010))). It also exists whenever a "defendant 'wilfully or purposefully, rather than negligently, embark[s] upon a course of wrongful conduct likely to cause death or great bodily harm.'" *Watson-Scott*, 298 Va. at 257 (quoting *Essex*, 228 Va. at 280-81).

"Circumstantial evidence is as acceptable to prove guilt as direct evidence, and in some cases, such as proof of intent or knowledge, it is practically the *only* method of proof." *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable

mind irresistibly to a conclusion [of guilt].'" *Rams v. Commonwealth*, 70 Va. App. 12, 36-37 (2019) (alteration in original) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)).

Here, the evidence supports the jury's implicit finding that appellant was not in a heat of passion during the confrontation at the YMCA. In support of his argument, appellant cites Boothe's testimony that appellant was "angry" and "foaming in the mouth." But that testimony related to appellant's demeanor during the parties' meeting at the shopping center on March 4, not during their confrontation at the YMCA on March 5. Appellant also argues that "the accusation regarding [appellant]'s girlfriend compelled a finding of heat of passion." However, appellant confronted Boothe with that accusation on March 4, when he was armed with a knife. A reasonable factfinder could conclude that, if appellant had been acting on impulse without conscious reflection, he would have attempted to harm Boothe on March 4 instead of waiting until a later date. There was a reasonable opportunity for any passion appellant experienced on March 4 to cool before the events of March 5. These facts do not prove a simultaneous occurrence of both reasonable provocation and passion. The evidence therefore shows that appellant's action was attributable to malice, and not heat of passion.

Appellant also argues that, because Boothe was choking him, he reasonably feared that Boothe would strangle him to death and so he acted in self-defense. However, the evidence also supports the factfinder's implicit conclusion that appellant was not reasonably provoked. It was appellant, not Boothe, who initiated the confrontation by demanding to know where Boothe was and driving to meet him. It was appellant, not Boothe, who caused the confrontation to turn violent by pulling a gun out and pointing it at Boothe. Although Boothe tried to seize the gun by tackling appellant, the surveillance footage, Boothe's testimony, and the photos of Boothe's injuries support the reasonable inference that appellant fired the gun and wounded Boothe in the chest. The surveillance footage corroborates Boothe's version of events. On the contrary,

appellant presented no evidence that Boothe provoked him. Appellant's argument that he reasonably feared that Boothe would choke him is not supported by any testimony to that effect. Because the jury's conclusion that appellant was not acting out of reasonable provocation is supported by the evidence and not plainly wrong, we will not disturb that finding on appeal.

The evidence also supports the finding that appellant acted with malice. He carried a deadly weapon on his person, drew it out, and deliberately pointed it at Boothe. Appellant's purposeful use of a deadly weapon was likely to cause, and indeed did cause, bodily harm to Boothe. Further, appellant's conduct and statements at the parties' earlier meeting at the shopping center demonstrated that appellant was motivated by ill will towards Boothe, due to his belief that Boothe had slept with appellant's girlfriend. Because no evidence cast reasonable doubt as to whether malice existed, appellant's malice was implied by his purposeful use of a deadly weapon.

Viewed as a whole, the evidence permitted the rational finding that appellant deliberately and intentionally sought out Boothe, pointed a deadly weapon at him, and shot him. Accordingly, as the evidence was competent, credible, and sufficient to prove beyond a reasonable doubt that appellant acted with malice, the trial court did not err by denying appellant's motion to strike or his motion to set aside the verdict.

## B. Jury Instructions

Appellant contends that the trial court erred by granting only one of his three proposed instructions on self-defense and that it should have granted his Instruction C, which was related to excusable self-defense.[1] He maintains that Instruction C was justified because the surveillance footage and Boothe's testimony made it "unclear which man had control of the firearm" when

---

[1] Although appellant notes that he proposed Instruction A, a "general definition" of self-defense as an "affirmative defense," he does not allege that the trial court erred by refusing that instruction.

- 10 -

they were injured. He stresses that a jury could have found that appellant feared for his life when he was trapped beneath Boothe, who is a "much larger man." Appellant asserts further that the jury could have reasonably concluded that appellant lacked the ability to retreat or that he "was signaling his intent to seek peace" when he tapped the back of Boothe's head.

At trial, appellant noted his objection to the trial court's ruling refusing Instruction C, but did not present the specific arguments about excusable self-defense that he raises on appeal. Instead, appellant had simply asserted that the surveillance footage was "sufficient as [a] silent witness to invoke self-defense." At trial, appellant only presented specific argument about Instruction B, which the trial court ultimately allowed.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "One of the tenets of Virginia's jurisprudence is that trial counsel must timely object with sufficient specificity to an alleged error at trial to preserve that error for appellate review." *Perry v. Commonwealth*, 58 Va. App. 655, 666 (2011). "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" *Id.* at 744 (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999)). "Of critical importance . . . is the principle that '[n]ot just any objection will do.'" *Jones v. Commonwealth*, 71 Va. App. 597, 606 (2020) (quoting *Bethea*, 297 Va. at 743). Instead, a trial court must be alerted to the precise issue to which a party objects. *Kelly v. Commonwealth*, 42 Va. App. 347, 354 (2004).

On appeal, appellant presents new, more specific arguments than those he presented to the trial court. At trial, appellant noted only that the surveillance footage "is sufficient" "to

invoke self-defense" and "clearly supports" Instruction B. He did not make any arguments specific to rejected Instruction C or excusable self-defense. The trial court therefore did not have the opportunity to rule on these arguments, and they are not preserved for appellate review. Appellant does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply those exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Accordingly, Rule 5A:18 bars our consideration of appellant's arguments about rejected Instruction C.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*