COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Petty and Beales
Argued at Richmond, Virginia

TARA MONIQUE THOMPSON

MEMORANDUM OPINION* BY
v.      Record No. 0842-16-2                     JUDGE RANDOLPH A. BEALES
                                                AUGUST 15, 2017
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Reginald M. Barley for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Tara Monique Thompson ("appellant") was convicted of felony child neglect in violation of

Code § 18.2-371.1. On appeal, she argues that the evidence was insufficient to support her

conviction. Specifically, she argues that the trial court erred by convicting her of an offense under

Code § 18.2-371.1(A)[1] because the evidence failed to show that her failure to take her son to the

hospital caused or permitted serious injury to the life or health of her child.

I. BACKGROUND

We consider the evidence on appeal "in the light most favorable to the Commonwealth, as

we must since it was the prevailing party" in the trial court. Beasley v. Commonwealth, 60

Va. App. 381, 391, 728 S.E.2d 499, 504 (2012) (quoting Riner v. Commonwealth, 268 Va. 296,

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant's conviction and sentencing orders list the offense as a violation of Code § 18.2-371.1. While that statute has two subsections, counsel for both parties agreed at oral argument that appellant was indicted, tried, and convicted of a violation of Code § 18.2-371.1(A), and the indictment of appellant is clearly based on subsection A of the statute.

330, 601 S.E.2d 555, 574 (2004)). So viewed, the evidence established that appellant and John Battle are the parents of J.B. On September 13, 2015, Battle dropped off J.B., who was then two years old, at appellant's house. Appellant's boyfriend, Rosmendale Lebron, also lived at that residence. A few days later on September 16, 2015, appellant called Battle to inform him that J.B.'s feet had been burned accidentally with hot bacon grease. On September 18, 2015, Battle texted appellant to ask about the condition of J.B.'s feet. At trial, when Battle was asked whether appellant sought medical attention for the child, Battle testified that appellant had told him that she would "take [J.B.] to Patient First."

Battle picked up J.B. from appellant's house on September 26, 2015. When Battle attempted to remove J.B.'s shoes to inspect his feet, J.B. shook his head and waved his hands as if to say "no." When Battle removed appellant's shoes, he noticed that J.B.'s socks were soaked through and wet. Battle testified that a "thick and slimy liquid" was coming out of the scabs on J.B.'s feet. J.B. cried while his father inspected the burns. Battle immediately took J.B. to the emergency room at Chippenham Hospital.

Heidi Britland, a nurse practitioner at the hospital, treated the burns on J.B.'s feet. When J.B.'s socks were removed, she observed first and second degree burns on the tops of both of J.B.'s feet. When asked if she was able to determine when the burns had taken place, Britland stated that they "looked older than a couple of days." At trial, Britland was asked, "Did it appear that any treatment was being conducted that you could tell?" She responded, "Not that I could tell." Britland did note, however, that the burns "were in the process of healing" and that the child's feet appeared "red and sore." She also testified that an untreated burn is "a wide open infection source" that could have led to "a massive infection from his feet." The nurse then debrided J.B.'s wounds, which is the process of removing the dead skin. She testified that the removal of dead skin is necessary "so the healing can start." Britland then cleaned J.B.'s burns and provided him with a

- 2 -

narcotic pain medicine. She also put some burn cream on J.B.'s feet and wrapped them in gauze. According to his father's testimony, J.B. remained at the hospital for two nights.

Appellant did not testify at trial. Rosmendale Lebron, appellant's boyfriend, testified that J.B.'s feet were accidentally burned by hot bacon grease on September 16, 2015 when appellant tripped over J.B. in the kitchen while cooking. Lebron testified that he took J.B. to the bathroom to rinse off the child's feet with cold water. He also testified that he called his sister, a physician, to obtain medical advice for treating J.B. Lebron stated that he followed that advice by cleaning J.B.'s feet with cold water, putting ointment or burn cream on the burns, and wrapping J.B.'s feet in gauze three times per day.

The trial court found that appellant's "failure to provide care caused or permitted serious injury to the health of the child." The court further found that "the burns opened a significant course of infection and imposed a serious injury to [J.B.'s] health." Other than the initial injury of the burns on J.B.'s feet, however, there was no evidence that J.B. suffered any additional serious injury.

## II. ANALYSIS

### A. Standard of Review

When considering the sufficiency of the evidence on appeal, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). "Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), "[w]e must instead ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder, 41 Va. App. at 663, 588 S.E.2d at 387 (quoting Kelly v.

Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

In consideration of appellant's assignment of error, we also evaluate Code § 18.2-371.1(A), under which appellant was tried and convicted, and any issues of statutory interpretation are reviewed *de novo*.

### B.  Felony Child Neglect

Appellant was charged and convicted under Code § 18.2-371.1(A), which states, in relevant part:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony.

The statute further states, "For purposes of this subsection, 'serious injury' includes but is not limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, and (vii) life-threatening internal injuries." Id.  On appeal, appellant argues that the Commonwealth failed to prove that appellant's failure to take her child to see a medical provider caused or permitted any serious injury to J.B.  Specifically, she argues that there was no evidence before the trial court that appellant's acts or omissions caused – or exacerbated – the injuries to J.B.'s feet.

"When the language of a statute is unambiguous, we are bound by the plain meaning of that language." Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011) (quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174,

178 (2007)).  Unlike the language chosen by the General Assembly in Code § 18.2-371.1(B)(1),[2] the plain language of Code § 18.2-371.1(A) specifically requires that a child suffer a "serious injury" *caused by* the defendant's acts, omissions, or refusal to provide necessary care to a child.  See Commonwealth v. Duncan, 267 Va. 377, 385, 593 S.E.2d 210, 215 (2004); Wood v. Commonwealth, 57 Va. App. 286, 298, 701 S.E.2d 810, 815 (2010).

The parties do not dispute that J.B.'s first and second degree burns were caused by an *accidental* spill of hot bacon grease.  The Commonwealth has not alleged, either to this Court or to the trial court, that those burns were caused by the willful acts or willful omissions of appellant.  Therefore, to sustain a conviction under *subsection A* of Code § 18.2-371.1, the evidence must prove that appellant's failure to provide necessary medical care either caused or permitted a "serious injury" to the child.

Upon our careful review of the record, we find that there was simply no evidence that J.B. actually suffered the required "serious injury," over and above the initial accidental burns, *as a result of appellant's failure to take the child to be examined by a medical professional*.  At trial, the nurse testified that the child's burns *could have* developed into an infection – not that the burns on the child's feet had become infected.  In addition, there was also no evidence that the child's existing injuries from the spilled bacon grease were actually exacerbated by appellant's failure to take the child to the hospital or to be seen by a doctor.  In fact, the testimony of the nurse practitioner established that J.B.'s vital signs appeared normal and that the burns "were in the process of healing" when he was admitted into the hospital.  Thus, the nurse practitioner's testimony at trial does not indicate that *any additional* injury occurred because of

---

[2] Pursuant to Code § 18.2-371.1(B)(1), "Any parent, guardian, or other person responsible for the care of a child under the age of 18 whose willful act or omission in the care of such child was so gross, wanton, and culpable as to show a reckless disregard for human life is guilty of a Class 6 felony."

appellant's failure to bring the child in for medical treatment earlier. Consequently, we find that the evidence in support of appellant's conviction for felony child neglect in violation of Code § 18.2-371.1(A) was insufficient as a matter of law.

Our reversal of appellant's conviction should certainly not be construed as an endorsement of appellant's behavior or choices. As an appellate court, "we are not free to affirm a conviction, even one obtained for behavior that we find reprehensible," unless the evidence at trial proved each of the elements of the offense charged in the indictment. Hutton v. Commonwealth, 66 Va. App. 714, 725, 791 S.E.2d 750, 755 (2016). "[T]he paramount principle of statutory interpretation is 'to interpret the statute as written.'" Miller & Rhoads Bldg., L.L.C. v. City of Richmond, 292 Va. 537, 542, 790 S.E.2d 484, 486 (2016) (quoting City of Lynchburg v. Suttenfield, 177 Va. 212, 221, 13 S.E.2d 323, 326 (1941)). As stated supra, the plain language of subsection A of Code § 18.2-371.1 requires a finding that appellant's willful acts, omissions, or her failure to provide the child with necessary care caused or permitted serious injury to the child. Unlike subsection B, subsection A does not criminalize conduct that simply creates the potential for serious injury to occur.[3] Appellant was quite fortunate that her failure to take her two-year-old son to the doctor (and the apparent lack of care to his wounds, according to the nurse practitioner's testimony) did not result in the wounds becoming infected or cause other serious repercussions to the child's health.

---

[3] The trial court seemed to agree that appellant's failure to provide necessary care to the child only exposed the child to the *possibility* of further injury. The trial judge stated, "The [c]ourt does not find that checking for a fever and applying ointment is a reasonable response to this *potential injury*." (Emphasis added). However, the trial court also found that the child's burns "opened a significant course of infection and imposed a serious injury to [J.B.'s] health." To the extent that the trial court did, in fact, find that appellant's failure to provide necessary care to her son *caused* an additional "serious injury," we conclude that particular finding of the trial court was not supported by the evidence in the record.

In short, upon our review of all of the evidence, we conclude that there was no evidence before the trial court that appellant's acts, omissions, or her failure to take J.B. to have his accidental burns examined by a doctor caused *any additional* injuries, serious or otherwise, to J.B.'s health. We find, therefore, that the evidence in support of appellant's conviction for felony child neglect in violation of Code § 18.2-371.1(A) was insufficient as a matter of law. Consequently, we reverse and dismiss appellant's conviction.

### III. CONCLUSION

In summary, given that all parties have agreed that the child's burns were accidental, we find that there was no evidence at trial that appellant's failure to take her child to see a medical provider actually ended up causing or permitting *any additional serious injuries* to her child's health, as required by subsection A of Code § 18.2-371.1. As a result, the evidence was insufficient to convict appellant of a violation of Code § 18.2-371.1(A), and we, therefore, must reverse and dismiss appellant's felony child neglect conviction.

Reversed and dismissed.