COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Malveaux and Causey
Argued at Norfolk, Virginia


TIMOTHY DENNIS HILGERS
                                                MEMORANDUM OPINION* BY
v.        Record No. 0340-23-1               JUDGE RICHARD Y. ATLEE, JR.
                                                    MAY 28, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Tanya Bullock, Judge

Thomas H. Sheppard, II (Sheppard & O'Brien, P.C., on brief), for
appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Timothy Dennis Hilgers appeals his conviction for felony driving on a revoked license in a

manner that endangered the life, limb, or property of another, in violation of Code

§ 46.2-391(D)(2)(a)(i). On appeal, he argues that the evidence was insufficient to support a felony,

as opposed to a misdemeanor, conviction because it failed to show his "driving, of itself,

endangered the life, limb or property of another." For the following reasons, we affirm.

I. BACKGROUND

"Consistent with the standard of review when a criminal appellant challenges the

sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the

Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74

Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

So viewed, one afternoon, Hilgers was driving a motorcycle traveling in the right lane on a three-lane highway. Alexis Gaymon, the prosecution's eyewitness, was a passenger in a vehicle, with her sister driving, behind Hilgers. Gaymon testified that she saw a motorcycle in front of her shift towards the left lane. She was not sure if the driver was attempting to change lanes or "was just more so swerving [sic]." The motorcycle then sideswiped a vehicle in the center lane. Hilgers and his motorcycle "began to slide at first, and then he began to roll." Gaymon testified that at the time of the accident, she did not see anything blocking their lane. Upon seeing the accident, Gaymon and her sister stopped and pulled over to "make sure [Hilgers] was okay," "[h]onestly, . . . to make sure he was alive." She saw Hilgers get up, then saw him "looking down at the ground stumbling." A number of beer cans had scattered from Hilgers's motorcycle, and some were spraying from hitting the ground. Gaymon saw Hilgers pick up one that was not spraying and begin to drink it. She noted that both the motorcycle and the car were damaged, describing the car as having "like a scratch or something" from the collision, but she did not go to the car to "check" the extent of the damage.

David Bechtol, a trooper with the State Police, arrived at the scene when Hilgers was already in an ambulance being treated for his injuries. He asked Hilgers for his license, but Hilgers said he did not have it. Hilgers told Bechtol that he had been "trying to get over from the lane he was in" at the time of the accident. After running Hilgers's information, Bechtol saw that Hilgers's license had been revoked. The Commonwealth also introduced evidence without

- 2 -

objection of Hilgers's "third offense felony DUI," as well as a certified excerpt of Hilgers's DMV record showing that his license had been revoked at the time of the collision.

Hilgers testified that on the day of the accident, he was testing out the motorcycle after spending months rebuilding it, and he went on the highway as part of "putting it through its paces." He said he needed to shift lanes because there was construction and there was "all kinds of debris, rocks, gravel" that made it "critical" for him to get out of the right-hand lane. He testified that he checked his mirrors and after merging, hit a car that was in his "blind spot." He did not see the car before hitting it. He described his memory as "clear" up to the point of the accident, after which it was "jumbled." He acknowledged that he picked up and drank a beer after the accident because he was "shook up." He had the beer with him because he was going to a friend's house; he denied drinking prior to the accident. Following the accident, Hilgers was in the hospital for four days being treated for a broken thumb, elbow, and ribs, as well as other injuries.

The trial court found that "it comes down to the testimony about essentially the defendant checking, but essentially the car was in his blind spot,"[1] which "created the endangerment of the other vehicle." Noting that this is necessarily a "fact specific" finding, "in this case, because it was [Hilgers's] obligation to check his blind spot to make sure that there was no one there" and he failed to do so, his driving endangered the life, limb, or property of another under Code § 46.2-391(D)(2)(a)(i). Although Hilgers "thought he checked" and testified that "[h]e checked twice, . . . nevertheless the vehicle was there" and Hilgers failed to see it, which "create[d] the endangerment." Hilgers received a sentence of two years, with one year suspended, which the court noted is the mandatory minimum. Hilgers now appeals.

---

[1] The trial court noted that the nature of the crash made it unlikely that the car was in Hilgers's actual "blind spot" because Hilgers struck towards the rear of the car, but it nonetheless continued to use the term while describing where the car was.

## II. ANALYSIS

When considering the sufficiency of the evidence in a criminal appeal, "we review the evidence in the 'light most favorable' to the Commonwealth," and we draw all reasonable inferences that flow from that evidence. *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). "Considering the evidence from that vantage point, '[a]n appellate court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."'" *Id.* (alteration in original) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "Instead, the only 'relevant question is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." *Meade v. Commonwealth*, 74 Va. App. 796, 805 (2022) (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 292 (2010)).

Hilgers argues that it was error to convict him of felony driving on a revoked license, as opposed to a misdemeanor. Driving on a revoked license is a felony when the defendant's "driving . . . of itself endangers the life, limb, or property of another." Code § 46.2-391(D)(2)(a)(i). If the driving does not create such a danger, the offense is a misdemeanor. Code § 46.2-391(D)(1). Hilgers concedes that he was guilty of the misdemeanor but argues that the Commonwealth failed to prove the endangerment element for the felony offense.

Here, the trial court was clear that this was a "fact specific" case, nevertheless finding Hilgers guilty because he failed "to check his blind spot to make sure that there was no one

there" before crashing into another vehicle on the highway. Even if the vehicle was not in Hilgers's actual "blind spot," it is uncontroverted that he failed to see it before hitting it. Hilgers stated that his memory was clear up to the point of the collision, but he could not explain his failure to see the car before striking it. Further, aside from Hilgers's own testimony, there was no evidence that any emergency or condition required him to shift lanes quickly, or explanation for why he would not have had time to check the lane before merging. The trial court was entitled to disbelieve Hilgers's explanation about the debris and road conditions, as well as his testimony that he checked his mirrors before changing lanes. *See Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998))). By shifting lanes without having adequately checked the adjacent lane, Hilgers endangered the vehicles and their occupants in that lane. *Cf. Cady*, 300 Va. at 330 (affirming a reckless driving conviction where the driver collided with another vehicle "within his full, unobstructed view . . . on a straight stretch of road on a clear, sunny day"). "[T]he possibility that another rational factfinder *could* have found differently does not mean that *no* rational factfinder would have found" Hilgers guilty of felony driving on a revoked license. *Noakes v. Commonwealth*, 54 Va. App. 577, 586 (2009). It is possible for a rational factfinder to find that Hilgers's failure to check the adjacent lane before shifting over endangered others or their property. Bearing in mind the standard of review on appeal, we cannot say the trial court erred in finding that Hilgers's "driving . . . of itself endanger[ed] the life, limb, or property of another." Code § 46.2-391(D)(2)(a)(i).

Hilgers argues that this Court should adopt a reading of Code § 46.2-391 that uses the same distinction between a misdemeanor and felony as in the now-repealed habitual offender

statute, Code § 46.2-357 (repealed 2021), which contained substantially similar language.[2]  In *Bishop v. Commonwealth*, 20 Va. App. 206, 210 (1995), we held that "[t]he distinction between negligent driving and reckless driving is the critical element in determining punishment" between a misdemeanor or felony offense under the habitual offender statute.[3]  Yet, "[a]s we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'"  *Commonwealth v. White*, 293 Va. 411, 419 (2017) (second alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).  In this case, the best and narrowest grounds are the trial court's express factual findings about Hilgers's driving that it relied upon in finding Hilgers guilty under the language in Code § 46.2-391.  The trial court's factual findings, and the resulting judgment, were not plainly wrong or without supporting evidence.  Therefore, it did not err in finding Hilgers guilty of felony, instead of misdemeanor, driving on a revoked license.

## III. Conclusion

Viewing the specific facts of this case in the light most favorable to the Commonwealth, the trial court did not err in finding the evidence sufficient to convict Hilgers for felony driving on a revoked license.  Accordingly, we affirm.

*Affirmed.*

---

[2] The habitual offender statute elevated the offense to a felony where the "driving . . . endangers the life, limb, or property of another."  Code § 46.2-357(B)(2) (repealed 2021).

[3] We note that the trial court appears to have considered this argument before convicting Hilgers—following a short recess to check case law, it expressly noted that "a lot of what you find comes under the old habitual offender statute" when considering the proof for a misdemeanor versus felony conviction.  It nonetheless went on to find Hilgers guilty of the felony offense.  It also specifically noted that this ruling was not endorsing the idea "that every single time you get on the road and you're driving, if there's an accident, . . . it would be endangerment."  In *Bishop*, we rejected the Commonwealth's argument in that case that "the legislature had intended a *per se* result," irrespective of a defendant's mens rea.  *Bishop*, 20 Va. App. at 211.