COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Callins and Frucci

UNPUBLISHED

CLAUDIE MATTHEW PAINTER

v.     Record No. 1682-24-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JUNE 24, 2025

FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Joel R. Branscom, Judge

(John S. Koehler; The Law Office of James Steele, PLLC, on brief),
for appellant.

(Jason S. Miyares, Attorney General; Sandra W. Workman, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, Claudie Matthew Painter was convicted of driving while

intoxicated (DWI), third or subsequent offense, driving after having his license revoked, and

refusing to provide a breath sample, subsequent offense. On appeal, he argues that the evidence

was insufficient to prove that he was driving the truck when it crashed. After examining the

briefs and record in this case, the panel unanimously holds that oral argument is unnecessary

because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

We recite the facts "in the 'light most favorable' to the Commonwealth, the prevailing

party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting

*Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so "requires us to 'discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Late one snowy night in January 2024, Painter called his coworker Cathy Guerra and told her that he had "slid in the ditch." Guerra questioned whether her small truck could pull his large one and offered to call a tow truck, but Painter insisted that she "come and try" to pull him out instead. Guerra drove to meet him.

Meanwhile, Painter's neighbor, Becky Walker, was driving home when she saw a truck "turned over on [the driver's] side" in the middle of the road. Walker approached on foot, saw Painter inside the truck on the driver's side, and asked if he was okay. He answered that he could not get out and that his foot was stuck. Unprompted, he also stated, "I know what it looks like but I was not driving." He claimed that he and a friend had picked up someone named "Shawn" and that Shawn had been driving. Walker called for an ambulance. Guerra soon arrived and spoke to Walker but did not speak to Painter. When medical personnel arrived, they knocked out the front windshield and extracted Painter from the driver's seat.

Botetourt County Sheriff's Deputy Clint Miller was on patrol that night when dispatch informed him of the accident.[1] Miller arrived to find Painter's truck flipped over on the driver's side. There were beer cans strewn all over the road and a half-empty bottle of vodka in the truck. There was blood on the driver's door near the steering wheel. Miller ran the truck's tags and determined that Painter was the registered owner. The road was "covered in snow" and there were many footprints around the truck, which Miller attributed to the medics. He and some of the medics searched for footprints leading away from the scene but found none.

---

[1] Dispatch reported that somebody named "Shawn" had been driving the vehicle, as relayed by Walker.

Miller first questioned Painter in the medical truck, where Painter received treatment for a cut on his hand. Painter told Miller that he had "just met" somebody named "Moe" at the gas station where Painter worked and "wanted to take him home" because he had "some pretty pants." Painter admitted that he had been drinking that night, so he let Moe drive. According to Painter, Moe was driving when the truck flipped over, causing Painter to fall on top of him. But Moe was "skinny" enough to squeeze out of the truck and run for help. Painter could not provide any other information about Moe, such as his last name, what he looked like, or where he went for help. No one, including anyone named Moe, returned in the roughly three hours Miller remained at the scene nor were there any signs made in the snow leading away from the scene.

Miller did not ask Painter to do field sobriety tests at the scene because of the icy conditions. Instead, he arrested Painter and transported him to the "docket." Miller conducted field sobriety tests there; Painter performed "poorly" on the horizontal gaze nystagmus test, the walk and turn test, and the one leg stand test but did "fine" on the alphabet test.[2] Miller asked Painter again where he met Moe, "[j]ust to try to see if the story would be the same." This time, Painter claimed to have met Moe at a chicken restaurant.

Painter refused to provide a breath sample.[3] Miller informed Painter that he had impliedly consented to provide a breath sample by operating a motor vehicle on a Virginia highway and that an unreasonable refusal would constitute a separate offense. Painter persisted in his refusal, claiming that he had not driven the truck. He signed a declaration and acknowledgement of refusal.

---

[2] The Commonwealth played video of the field sobriety tests at trial but did not enter that video as an exhibit.

[3] Painter also refused to take a preliminary breath test.

At trial and as part of Painter's case in chief, his neighbor, Richard Wood, testified that he knew someone named D.J. Fowler through Painter. Wood spent time with Fowler and Painter "four or five times" before the accident and believed that Fowler had been living with Painter. Wood knew Fowler as "D.J." and had never heard Painter call him "Moe" but testified that he learned after the accident that Fowler's nickname was "'Mose' or something like that." Wood claimed that Fowler knocked on his door on the night of the accident and said that he and Painter had been in a wreck and that Painter was stuck. Wood told Fowler that he could not help because he was home alone with his son. Wood did not call 911 and saw Fowler only once in passing between that night and the trial.

Painter admitted at trial that he drank "[q]uite a few shots" of vodka that night but claimed that Fowler had been driving. He testified that Fowler had been living with him for about a month after they met at the gas station where Painter worked. Painter claimed that he had nicknamed Fowler "Moe" because "he always wanted mo food," though Painter conceded that nobody else called him by that name. According to Painter at trial, Fowler flipped the truck, causing Painter to fall into the driver's seat on top of Fowler. Fowler then "wiggled around" Painter, who was able to push him out through the passenger door.[4] Fowler then tried to pull Painter out through the passenger door but could not lift him. Fowler also tried unsuccessfully to pull Painter out through the back window, but Painter could not fit over the headrest. Once that failed, Fowler left to get help from Wood. Painter claimed that he did not call for a tow truck because he could not afford it. When asked why he did not provide Miller with more information about Fowler, Painter responded that he "was a little intoxicated." Painter denied telling Walker that his foot had been stuck or that "Shawn" had been driving.

---

[4] Painter first testified that he pushed Fowler out of the driver door. When his attorney noted that the truck was laying on the driver's side, Painter clarified that he pushed Fowler out through the passenger door.

- 4 -

The Commonwealth submitted orders showing that Painter had been convicted of DWI, second offense in 2017, and DWI, third offense in 2018. The Commonwealth also submitted Painter's Department of Motor Vehicles record, which showed that Painter's driver's license had been revoked following his third DWI conviction.

The circuit court convicted Painter of DWI, third or subsequent offense; driving after having his license revoked; and misdemeanor refusing to provide a breath sample, subsequent offense. The court found that Painter's testimony was incredible and that he frequently changed his story to conceal his guilt. Ultimately, the circuit court had "no doubt at all that [Painter] was driving the vehicle and . . . testified untruthfully." The court sentenced Painter to 10 years and 90 days' incarceration, with 7 years suspended. This appeal follows.

ANALYSIS

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

The only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from

the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

Painter's sole argument on appeal is that the circuit court erred in finding the evidence was sufficient to prove Painter was driving the vehicle at the time of the crash.[5] "Circumstantial evidence, if sufficiently convincing, is as competent and entitled to the same weight as direct testimony." *Maust v. Commonwealth*, 77 Va. App. 687, 699 (2023) (en banc) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). Circumstantial evidence may establish each element of a crime as long as it "exclude[s] every reasonable hypothesis of innocence." *Id.* (quoting *Haas v. Commonwealth*, 299 Va. 465, 468 (2021)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." *Vasquez v. Commonwealth*, 291 Va. 232, 249-50 (2016) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 513 (2003)). "[T]he factfinder 'determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant.'" *Sample v. Commonwealth*, 303 Va. 2, 17 (2024) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). "[W]hether an alternate hypothesis of innocence is reasonable is a question of fact" that "is binding . . . unless plainly wrong." *Maust*, 77 Va. App. at 700 (quoting *Wood v. Commonwealth*, 57 Va. App. 286, 306 (2010)).

Moreover, "determining the credibility of the witnesses and the weight afforded [their] testimony . . . are matters left to the trier of fact, who has the ability to hear and see them as they

---

[5] Painter's convictions for DWI and driving on a revoked license both require proof that he drove or operated a motor vehicle. Code §§ 18.2-266, 46.2-391(D). But that is not an element under Code § 18.2-268.3(A), which makes it unlawful for a person who has been arrested for DWI "to unreasonably refuse to have samples of his breath taken." Painter argued below that his refusal was reasonable because he was not the driver. However, he does not make that argument on appeal. In any event, the evidence was sufficient to prove that Painter drove a motor vehicle.

testify." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). We will not disturb the factfinder's credibility determinations "unless plainly wrong." *Maust*, 77 Va. App. at 703 (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 291 (2011)).

With these principles in mind, a reasonable factfinder could conclude beyond a reasonable doubt that Painter was driving when his truck flipped. In *Corbin v. Commonwealth*, 44 Va. App. 196, 203 (2004), we found sufficient evidence that the defendant was the driver even though no eyewitness saw him driving because he exited the driver's side of the vehicle, was the only person seen leaving the vehicle, and provided conflicting information about the identity of the person he asserted had been driving, initially stating that he did not know the driver's identity but later claiming that it was a man named "James." We explained that the circuit court could "disbelieve [the defendant's] self-serving testimony" and conclude that he was "lying to conceal his guilt." *Id.* (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

The same result is warranted here. Painter was found and extracted from the driver's side of the vehicle. None of the witnesses (other than Painter) testified that they saw anybody but Painter in the truck. While there were many footprints around the truck, none leading away from the scene were found. A choice between two interpretations of a fact is arbitrary "only when no rational factfinder could believe the incriminating interpretation of the evidence and disbelieve the exculpatory one." *Vasquez*, 291 Va. at 250. And a factfinder may infer a fact that is "more probable and natural . . . than other explanations." *Barney*, 302 Va. at 98. Here, the most probable and natural explanation is that Painter was driving the truck when it flipped over.

The support for Painter's alternate hypothesis comes primarily from Painter himself. But the circuit court expressly rejected Painter's testimony as incredible. That credibility

determination was not plainly wrong. Walker testified that Painter told her that somebody named "Shawn" had been driving and that there had also been a third person in the truck. Painter then told Miller that he had "just met" someone named "Moe" at a gas station before later claiming to have met him at a chicken restaurant. At trial, Painter testified that Moe was actually D.J. Fowler and that Fowler had been living with Painter for about a month. Despite that apparently close relationship, Painter could not give Miller any details about Moe on the night of the accident, not even Moe's real name. And despite Painter's claim that Moe had run for help, Moe did not return in the approximately three hours that Miller was at the scene. In short, the circuit court as factfinder could reject Painter's self-serving and oft changing explanations and conclude that he was merely "lying to conceal his guilt." *Corbin*, 44 Va. App. at 203. Thus, the evidence supports the circuit court's finding that Painter had driven a motor vehicle. Because Painter does not challenge any other element of his convictions, we affirm the convictions.

CONCLUSION

For these reasons, the circuit court's judgment is affirmed.

*Affirmed.*